L5C5kinC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

HAROLD KING,

                Plaintiff,

          v.                          20 Civ. 1784 (VSB)
                                      Remote Proceeding
FEDCAP REHABILITATION
SERVICES, INC., et al.,

                Defendants.
------------------------------x
                                      New York, N.Y.
                                      May 12, 2021
                                      2:15 p.m.
Before:

                  HON. VERNON S. BRODERICK,

                                      District Judge


                         APPEARANCES


LEE LITIGATION GROUP, PLLC
     Attorneys for Plaintiff
BY:  C.K. LEE

EPSTEIN BECKER & GREEN, P.C.
     Attorneys for Defendants
BY:  JEFFREY H. RUZAL
     ADRIANA S. KOSOVYCH
```

1          (Case called; The Court and all parties appearing
2     telephonically)
3          THE COURT:  Let's go on the record.
4          I ask first, beginning with plaintiff's counsel, for
5     counsel to please identify themselves for the record.  And
6     please remember when you do speak, please state your name first
7     so that we can make sure that we have an accurate record.  And,
8     in addition, when you are not speaking, I ask that you try and
9     mute your phone so that we can make sure that we don't have any
10    background noise interfering with the transcription.
11         For the plaintiff?
12         MR. LEE:  It is C.K. Lee.  Good afternoon, your Honor.
13         THE COURT:  Good afternoon.
14         For the defense?
15         MR. RUZAL:  Jeff Ruzal and Adriana Kosovych for
16    Epstein, Becker & Green.  Good afternoon, your Honor.
17         THE COURT:  Good afternoon.
18         Now, I asked for this conference in part to figure out
19    exactly what was going on.  I know that the parties had
20    initially, there was a submission of a dismissal pursuant to
21    Rule 41.  I think I issued an order inquiring about whether or
22    not there was in fact a settlement.  I understand that the
23    parties had been engaged in settlement negotiations but things
24    have fallen through and I think, from the last communication,
25    my understanding is, Mr. Lee -- that plaintiffs -- that at

1  least on the terms that had been discussed, plaintiffs wished

2  to proceed with the litigation and are no longer interested in

3  the settlement under the terms I guess the parties had

4  discussed.

5         Is that an accurate description?

6         MR. LEE:  That's right, your Honor.

7         THE COURT:  Okay.

8         And is there anything -- and again, I don't know what

9  the specific issues were or terms that may have been in dispute

10 but is there any -- would there be any usefulness to having the

11 parties either go before a magistrate judge or the Court's

12 mediation program to try and work out whatever those

13 differences were?

14        Let me first ask, Mr. Lee, from your perspective, and

15 then I will ask Mr. Ruzal or Ms. Kosovych to respond from the

16 defendant's perspective.

17        MR. LEE:  Yes.  Thank you, your Honor.

18        On the plaintiff's side, I don't think so.  I mean,

19 the terms that we provided to the defendants are kind of black

20 and white and so they either are accepted or they aren't, and

21 they haven't accepted it so we are prepared to move forward.

22        THE COURT:  Okay.  Let me ask from Mr. Ruzal for the

23 defendant's perspective, or Ms. Kosovych.

24        MR. RUZAL:  Thank you, your Honor.

25        MS. KOSOVYCH:  Thank you, your Honor.  This is Adriana

1    Kosovych.  I will kick it right off.
2               So, from defendant's perspective, we actually were in
3    negotiations, as your Honor is aware, for a pretty long time
4    beginning in July of last year, and then finally in late
5    December, early January, the parties actually reached a
6    settlement with the amount of consideration and specific
7    material terms to which both defendants and plaintiffs agreed.
8    We then embarked, of course, to prepare a long-form written
9    settlement agreement memorializing those terms.  Before we
10   provided the draft settlement agreement to plaintiff your Honor
11   issued the order requiring that the parties submit the
12   agreement for fairness approval which required a series of
13   revisions to make sure that the agreement comports with the
14   requirements under *Cheeks*.  We did that.  And when we provided
15   the revised agreement to plaintiff's counsel, there was
16   essentially agreement on all material terms, save one; there
17   was dispute over one remaining term.  Plaintiff returned
18   red-lined edits which we accepted all of them but that one
19   term.  We went back and forth and finally we provided a revised
20   version as a counterproposal on that one term and that's when
21   plaintiff's counsel basically blew up the deal and provided a
22   version of the agreement from which plaintiff's counsel
23   eviscerated all of the material terms of the agreement that had
24   previously been agreed.
25              In a last good faith effort, prior to this conference,

to try to resolve the dispute over the one remaining term, we sent back a further updated agreement in which we actually sent the revisions that plaintiff's counsel had sent us -- meaning we accepted all of their edits -- and, nevertheless, plaintiff's counsel said, no thank you, we no longer wish to settle on the terms that we had agreed before.

So, that is kind of what -- from defendant's perspective, we certainly remain interested in resolving this matter, we thought we had a deal. We believe that the material terms were all agreed on but that one and we were willing to give and to concede on that one term. So, you know, if we had our druthers, we want to move forward with the settlement agreement that we thought we had agreement on.

THE COURT: Let me ask this, Ms. Kosovych. That one, the term that you are referring to, was that an issue of consideration or some other term that was part of the agreement?

MS. KOSOVYCH: No, your Honor; it had nothing to do with the amount of consideration. The consideration was accepted in January and has remained the same throughout, nor does it have to do with the release that was also agreed on, it was a different term.

THE COURT: Okay. So let me ask, Mr. Lee, I assume that the agreement was, in terms of the acceptance early on, was something that was agreeable to your client. What is it

1    that transpired here other than perhaps -- well, let me ask,
2    what is it that transpired here?
3             MR. LEE:  Thank you, your Honor.
4             So, basically, defendants originally had put all sorts
5    of onerous terms into the agreement and they maintained and
6    insisted on additional onerous non-monetary terms and so we
7    weren't comfortable with it.  And so, I mean, there is more
8    towards -- look.  If they had the kind of Bloomberg form,
9    right, and get a release, right, and they pay, like that would
10   have been fine, that's what we are comfortable with, but they
11   sent back something that was -- I can't remember how many, like
12   10, 15 pages long, right, with all sorts of covenants and
13   representations and all kinds of obligations including asking
14   my firm to limit our ability to represent other lawsuits for
15   them which I think is an unethical request and I told them
16   that.  And they insisted on including other onerous terms and
17   so we don't want to deal with it.  I gave them numerous
18   opportunities to revise and they refused and I just don't
19   understand why, if they refused, why we have to take their
20   additional terms that are onerous and unacceptable.
21            THE COURT:  Well, let me ask this. What I am hearing
22   and what I don't quite understand, if the terms are in fact
23   onerous and some of those terms, to the extent they're onerous
24   may not necessarily -- and I am not in any way, since I don't
25   know the terms I am not in any way opining on this, but may not

1   necessarily be consistent with *Cheeks*.  Having said that, if
2   the onerous terms are not, don't directly impact the clients
3   you currently represent, I just don't know -- I don't know
4   enough to enter into the consideration remains the same, in
5   other words amount of money that the clients are going to be
6   receiving and it is the other terms, wouldn't the assistance of
7   a magistrate judge in particular, who is familiar with how the
8   *Cheek* settlements, settlements in the FLSA cases typically run
9   out, wouldn't the assistance of a magistrate judge be helpful
10  to at least try and see if the parties could resolve the
11  issues?  But, from what I heard Ms. Kosovych indicating, is
12  that with regard to the latest draft submitted by your firm,
13  Mr. Lee, they indicated they accepted all of the revisions.
14  So, I don't know, were there still other terms that were left
15  open or were you unaware that they had accepted whatever the
16  most recent draft that was settled into the agreement was that
17  your firm had sent over?
18          MR. LEE:  Thank you, your Honor.  It is C.K. Lee for
19  the plaintiff.
20          So, I did receive correspondence that they said that,
21  to that effect, but I don't -- I looked at what they revised
22  and it was not what my markup was and so I don't think
23  they've -- I can double check, but my understanding is they did
24  not revise their agreement based on my revisions based on my
25  adamantly requested revisions.

1     MS. KOSOVYCH:  Your Honor, if I may?

2     THE COURT:  Yes.

3     MS. KOSOVYCH:  May I clarify a couple things?

4     So, first, I want to make clear that the version of
5 the agreement that we accepted was a version that was sent to
6 us and this is just for purposes of making the distinction
7 easier, a version of the agreement that was sent by two other
8 attorneys at Mr. Lee's firm on Friday, April 30th.  That
9 version of the agreement we agreed to and we had just one
10 minor, non-substantive point that we needed clarification on
11 from the plaintiff's counsel.  The version that Mr. Lee is
12 referring to that he is saying we did not accept is a version
13 that he sent us on Sunday, May 2nd, which was a handwritten
14 markup, literally Xs through wholesale terms that were no
15 longer under discussion for at least two months, they had been
16 accepted and, mind you, some of which were accepted in January
17 at the outset of plaintiff's agreement to settle for the offer
18 that we had offered for the amount of consideration that we had
19 offered.  So, Mr. Lee is referring to the version that took out
20 the bulk of the agreement that we already had.

21     With respect to Mr. Lee's statements that we were
22 putting in onerous provisions, some of which violated rules of
23 ethics because they limited his firm's ability to represent
24 other clients, I must correct the record, neither of those
25 statements is true.

1         First, the terms that we had in the settlement
2    agreement are exactly the same as terms that we had used
3    previously and exactly the same form agreement that we had used
4    previously with Mr. Lee's firm with Mr. Lee in other matters.
5         Secondly, the one term that he called unethical did
6    not in any way limit his firm's ability to represent other
7    clients.  All it did was seek a representation from Mr. Lee's
8    firm as to who they were currently representing now in
9    connection with claims or potential claims against defendants
10   which, you know, to us doesn't violate any rule about this.  It
11   doesn't limit representation, it just asks for a representation
12   as to current representation and, you know, just like I said
13   before, we did agree to his revision to that one term, so.
14        THE COURT:  All right.  This is what I am going to do.
15   Although typically I don't force parties to go to a magistrate
16   judge, I think in this instance where there is so much back and
17   forth, I would like to have Magistrate Judge Aaron meet with
18   the parties, get the history of what has transpired to see if
19   the gap, whatever it may be, could be bridged.  Based upon what
20   I am hearing today and the correspondence that I received, I do
21   think it is worth at least an attempt to have Judge Aaron
22   assist the parties in that way and so that's what I am going to
23   do.  I will indicate to Judge Aaron that I will advise him that
24   it is prior to receiving submissions from the parties, or
25   simultaneously, that he should also obtain a transcript of our

conversation here today.  I do think that it may not work and that's fine and I am in no way forcing, knowingly suggesting that one side or the other should accept or be forced to accept terms that they believe are unacceptable in the agreement but, in light of what's been said concerning the consideration that would be received by plaintiffs and the timeline of the negotiations, I think that Magistrate Judge Aaron could be of use.  So, I am going to --

MR. LEE:  Your Honor, I'm sorry.  This is C.K. Lee.  Instead of Judge Aaron, I know the Court had initially provided the option of using the panel mediators and I think scheduling a panel mediator may be faster than using Judge Aaron.  Is that something the Court could consider instead?

THE COURT:  Well, let me hear from defense counsel about that and then I will weigh in.

Mr. Ruzal or Ms. Kosovych?  Ms. Kosovych, do you want to, since you were taking the lead, do you want to address that?

MS. KOSOVYCH:  Sure, your Honor.

I don't think our client would be amenable to engaging in mediation through the panel because we believed that we had an agreement.  I think if the Court is inclined to order the parties to do anything, I think we would prefer to meet with the magistrate judge for the sole purpose of resolving the dispute over the remaining term.  I also would say that in my

1    client's view, regardless of whether it is with the magistrate

2    judge or speaking before a panel mediator, any further

3    discussion of settlement would certainly not include any

4    renegotiation of the amount of consideration or the other, you

5    know, terms.  In our view, it should be solely over the dispute

6    of one term.

7             THE COURT:  Okay.  All right.  What I will say is the

8    following:  With regard to magistrate judge versus the

9    mediator, my inclination is to have Magistrate Judge Aaron

10   handle this.  With regard to what is on the table in terms of

11   within the purview of Magistrate Judge Aaron, I understand,

12   Ms. Kosovych, your position and the position of your client,

13   and I imagine that Mr. Lee may have similar with regard to his

14   client, but I'm not going to tie Judge Aaron's hands in sort of

15   wading through what has transpired here.  I do think it makes

16   sense to have a magistrate judge handle this because it seems

17   to me there may be legal issues and, in fact, although

18   Ms. Kosovych you haven't said this, it is implicated in your

19   comments that, from your client's perspective, there is a deal

20   and you haven't said that you moved to enforce whatever that

21   deal is because everything was in place except for final

22   written documents.  And although, not something that typically

23   we see, I suspect that there is a possibility that that might

24   be something that might be -- a motion that might be made.  And

25   I am not in any way saying you should make a motion -- I have

1  got no idea -- but I want to attempt to circumvent any further
2  motion practice or litigation.
3           Look.  I don't have a problem passing the case but
4  under the circumstances presented to me, I would like pledgee
5  Aaron to take -- to make an effort to see if he can bridge the
6  gap, whatever that gap may be, or whether he can help the
7  parties reach a resolution.  Obviously if either party doesn't
8  want to change the terms -- and I understand, Ms. Kosovych,
9  from your client's perspective the consideration was what
10 they're willing to offer, but I'm not going to limit Magistrate
11 Judge Aaron in terms of what he thinks might be appropriate in
12 terms of managing of the matter in terms of a conference with
13 regard to settlement.  And what would I say is, obviously,
14 everyone should present their points in advance of meeting with
15 Judge Aaron and, as I indicated, I will suggest that he receive
16 a copy of the transcript of this proceeding in advance of
17 having you either on the phone or, if possible, in person or
18 for any session, any settlement session.
19          So, I am going to do the referral to Judge Aaron and
20 direct that the parties go to see him under the unique
21 circumstances that have been presented to me in this matter.
22          There is another issue that I had raised internally
23 with my law clerk but I just wanted to make the parties aware
24 of something, or at least delve into something that I don't
25 believe is an issue but the parties should be aware of it.  Let

me ask either Mr. Lee or Ms. Kosovych, the entity FedCap Rehabilitation Services, Inc., do they provide staffing to the federal government and specifically to the court houses, and specifically for a janitorial or cleaning staff?  Do either of you know the answer to that?

        MS. KOSOVYCH:  I'm sorry, your Honor.  I don't know that but we can inquire.

        THE COURT:  The only reason why I raise it is I know the folks who provide those services, janitorial and cleaning services to the federal court house and I believe also to the U.S. Attorney's office, are known as FedCap workers and I don't know whether it is the same company or not.  But I thought I would raise it with the parties just so that you are aware.  Again, I don't think it necessarily matters but I think the parties should just be aware of that, and I also don't know whether it implicates the proposed class here or not but I thought the parties should be aware of it.  And if you can discuss it between yourselves and with your client, it may be a different entity but it may be the same entity but I just thought I would raise it.

        Okay.  Let me ask, is there anything else that we need to discuss today?  Mr. Lee?

        MR. LEE:  Nothing on the plaintiff's side.  Thank you, your Honor.  I appreciate the Court's courtesy and patience.

        THE COURT: Sure.  No, not a problem.

|    |                                                                          |
|----|--------------------------------------------------------------------------|
| 1  | Anything else, Ms. Kosovych?  Mr. Ruzal?                                 |
| 2  | MS. KOSOVYCH:  Actually, your Honor, I did have a                        |
| 3  | question.  You suggested that the parties should submit their            |
| 4  | respective positions to Magistrate Judge Aaron in advance of             |
| 5  | whatever scheduled conference we have.  I just wanted to                 |
| 6  | clarify that should we, you know, we are typically of course             |
| 7  | very reluctant or cautious, I should say, about submitting               |
| 8  | settlement discussion materials or draft a settlement agreement          |
| 9  | to the Court so what type of information or what type of                 |
| 10 | disclosures was your Honor referring to?                                 |
| 11 | THE COURT:  Well, I was thinking about leaving it up                     |
| 12 | to the parties.  I do understand the reluctance of submitting            |
| 13 | those things to a court because it, you know, technically they           |
| 14 | can't be used in terms of litigating the case at a later time            |
| 15 | frame.  I don't know to what extent there is going to be or              |
| 16 | there was consideration on defendant's part of motion practice           |
| 17 | relating to the fact that you believe you had a deal which I             |
| 18 | think would require that sort of an exchange.  I know typically          |
| 19 | Judge Aaron, I think this is an a typical situation so that              |
| 20 | Judge Aaron typically wouldn't -- that is something that he, I           |
| 21 | would imagine, doesn't get in any other cases because it is              |
| 22 | usually -- it is usually to, although settlement discussions             |
| 23 | may have occurred, they haven't been in this posture.  So, I'm           |
| 24 | not requiring, Ms. Kosovych, for you to submit drafts and the            |
| 25 | like.  I would leave it up to counsel to decide what they                |

1  believe is appropriate.  If they believe it is not necessary to
2  provide drafts but you can provide a narrative in a letter or
3  submission to Judge Aaron, that's up to you and I would leave
4  it up to the parties.  I am not in any way directing that you
5  are required to submit drafts or the exchange of e-mails.  I
6  will leave it up to you as to what you believe was both
7  consistent with your representation of your client and also
8  efforts to try and then move the ball forward in terms of the
9  settlement itself.
10            MS. KOSOVYCH:  Thank you, your Honor.
11            THE COURT:  Okay.  All right.  Let me ask, and I don't
12  believe, did I ask Mr. Lee, is there anything else from the
13  plaintiff?
14            MR. LEE:  Nothing from the plaintiff except I will add
15  my perspective is I absolutely believe that the agreement is
16  public and we will be filing our revisions that we have
17  suggested to the defendants on the Court docket for Judge
18  Aaron.
19            MS. KOSOVYCH:  Oh.
20            THE COURT:  Well, I think there is a separate thing
21  there, Mr. Lee.  I mean, basically saying you are going to file
22  something on the Court docket means it is going to be public
23  and since you haven't yet reached a settlement, that is
24  something that I won't permit to you do.  It is one thing if
25  you want to submit something to Judge Aaron for his in camera

1   review in connection with the settlement conference with him.

2   It may be that somewhere down the line there is some form of

3   motion practice that does result in an attempt to enforce

4   whatever the agreement is.  Then I will have to determine

5   whether or not whatever gets submitted in connection with that

6   motion whether or not it should be public or not or it is

7   submitted in redacted form.  But, in terms of just filing

8   things on the docket, I would, in terms of the drafts that went

9   back and forth, I would think that before doing that you need

10  to meet and confer with your adversary, come to some sort of

11  understanding, and if that understanding, you can't reach an

12  agreement on that, if it is referred to Judge Aaron, I will let

13  Judge Aaron decide that issue.  But since those matters, drafts

14  are typically not something that are filed and it's one thing

15  if it is part of a motion, then arguably it becomes a court

16  document but I'm not sure, in terms of a settlement conference,

17  that that necessarily means that it would be.  In fact, I think

18  some of the settlement submissions that are submitted in

19  connection with magistrate judge's conferences are done

20  confidentially.  I'm not sure that, at least in my experience,

21  ever seeing those exchanges that may be provided to a

22  magistrate judge on my docket.

23          So, I will just leave the parties with that.  And

24  before you do that I would ask that you, A, not just file it;

25  but, B, walk through what you intend to do with Judge Aaron so

1   that we won't have a problem with things on the docket that we
2   later have to either only half of the parties review or to
3   strike from the docket later on.
4          MR. LEE:  Absolutely, your Honor.  I don't want to
5   prolong this unnecessarily.  I know settlement discussions are
6   not admissible under 408 but I don't think they are
7   confidential and this is -- our discussions were not pursuant
8   to a mediation, a mediation had been over, so I'm not aware of
9   any confidentiality that I would otherwise be subject to.  But
10  we would definitely adhere to any rules that Judge Aaron would
11  require.
12         MS. KOSOVYCH:  Your Honor, if I may interject?
13         We actually entered into a confidentiality stipulation
14  specifically for the purposes of settlement requiring the
15  parties to maintain confidential all the information exchanged
16  and communications exchanged throughout the settlement
17  discussions starting in July.  The confidentiality stip was
18  signed, I believe, July 22nd of 2020 and that has been in place
19  the entire time.  We would strongly object to Mr. Lee's
20  publicly filing any communication, any information, and any
21  drafts of the settlement agreement that were exchanged
22  throughout the parties' discussions.
23         THE COURT:  Okay.  All right.  As I indicated, before
24  any of that happens, Mr. Lee, you are to raise the issue before
25  Judge Aaron.  I don't -- I am just looking at the docket right

1   now.  Ms. Kosovych, was that a stipulation that was filed with
2   me or was it something just between the parties?
3           MS. KOSOVYCH:  I believe it was between the parties,
4   your Honor.
5           THE COURT:  All right.  So I do think that before
6   anyone files things like that, including the e-mail exchanges
7   and the like, that you consult with Judge Aaron, filed on the
8   public docket.  Again, because I refer many matters to
9   magistrate judges for settlement purposes and I assume,
10  although I don't know because I -- well, what I can say is I
11  have never seen, on the docket, an exchange of letters setting
12  forth the parties' relative position on the settlement on the
13  public docket.  Maybe I am missing something.  But, regardless
14  of that, what I am directing the parties to do is before you
15  start filing things on the public docket, you raise the issue
16  with your adversary.  If there is disagreement, then you raise
17  it with Judge Aaron for his input before you file things on the
18  public docket that relate to settlement.  Okay?
19          MS. KOSOVYCH:  Thank you.
20          THE COURT:  Thank you.
21          MR. LEE:  Thank you, your Honor.
22          THE COURT:  And obviously, Ms. Kosovych, to the extent
23  there is a stipulation you can obviously, if there is a
24  dispute, make Judge Aaron aware of whatever agreements the
25  parties had previously had.

L5C5kinC

1           MS. KOSOVYCH:  Of course.
2           THE COURT:  Thank you very much, everyone, for getting
3  on the phone.  We will stand adjourned.
4                              o0o
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25