NEW YORK DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HAROLD KING,<br>*on behalf of himself, FLSA Collective Plaintiffs, and the Class*,<br><br>Plaintiff,<br><br>- against -<br><br>FEDCAP REHABILITATION SERVICES, INC., and WILDCAT SERVICE CORPORATION,<br><br>Defendants. | Case No.: 20-CV-1784 (VSB) (ADS) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO ENFORCE SETTLEMENT**

EPSTEIN BECKER & GREEN, P.C.
875 Third Avenue
New York, New York 10022
(212) 351-4500
*Attorneys for Defendant FedCap
Rehabilitation Services, Inc. and
Wildcat Service Corporation*

FIRM:53542222

# **TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS .............................................................................................................. 2

    A.         History of the Parties' Settlement Negotiations. ..................................................... 2

    B.         Plaintiff's Counsel—Not Plaintiff—Reneged On the Settlement
               Agreement Over Language Affecting Only Lee Litigation Group. .................... 5

ARGUMENT ................................................................................................................................. 7

    A.         Applicable Standard. ............................................................................................... 7

    B.         *Kolchins III* and Its Progeny Confirms the Email Exchanges Between
               Plaintiff and Defendants Created a Binding Settlement Agreement. ................. 9

    C.         The Parties' Settlement Agreement Is Enforceable. ........................................... 11

CONCLUSION ............................................................................................................................ 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alvarez v. City of New York,*
  146 F. Supp. 2d 327 (S.D.N.Y. 2001) ............................................................................. 12, 13

*Cheeks v. Freeport Pancake House, Inc.,*
  796 F.3d 199 (2d Cir. 2015) ....................................................................................................4

*Conway v. Brooklyn Union Gas Co.,*
  236 F. Supp. 2d 241 (E.D.N.Y. 2002) ................................................................... 8, 11, 12, 13

*Forcelli v. Gelco Corp.,*
  109 A.D.3d 244 (2d Dep't 2013) ............................................................................................8

*Hostcentric Techs. Inc. v. Republic Thunderbolt, LLC,*
  No. 04 CIV. 1621 (KMW), 2005 WL 1377853 (S.D.N.Y. June 9, 2005) ..............................8

*Int'l Telemeter Corp. v. Teleprompter Corp.,*
  592 F.2d 49 (2d Cir. 1979) ................................................................................................... 11

*Jordan Panel Sys. Corp. v. Turner Constr. Co.,*
  45 A.D.3d 165 (1st Dep't 2007) ..............................................................................................7

*Kolchins v. Evolution Mkts. Inc. (Kolchins I),*
  No. 653536/2012, 2013 WL 4494380 (Sup. Ct. N.Y. Cnty. Aug. 19, 2013) ........................10

*Kolchins v. Evolution Mkts., Inc. (Kolchins III),*
  31 N.Y.3d 100 (2018) ..................................................................................................... passim

*Kolchins v. Evolutions Mkts., Inc. (Kolchins II),*
  128 A.D.3d 47 (1st Dep't 2015) ............................................................................................10

*Kowalchuk v. Stroup,*
  61 A.D.3d 118 (1st Dep't 2009) .......................................................................................... 7, 8

*Omega Eng'g, Inc. v. Omega, S.A.,*
  432 F.3d 437 (2d Cir. 2005) ..................................................................................................13

*Powell v. Omnicom*,
    497 F.3d 124 (2d Cir. 2007) ...................................................................................................8

FIRM:53542222

## PRELIMINARY STATEMENT

Defendants Fedcap Rehabilitation Services, Inc. ("Fedcap") and Wildcat Service Corporation ("Wildcat") ("Defendants"), submit this Memorandum of Law in Support of Their Motion to Enforce Settlement ("Motion").

Controlling authority by the New York Court of Appeals in *Kolchins v. Evolution Mkts., Inc. (Kolchins III)*, 31 N.Y.3d 100 (2018), and its progeny support enforcement of the settlement agreement, finalized after over a year of arms' length negotiations, between Defendants and Plaintiff Harold King ("Plaintiff"). From nearly the inception of this action in February 2020, the parties agreed to engage in settlement discussions to fully resolve the instant dispute without resorting to litigation. Indeed, the parties commenced settlement discussions before the litigation commenced in earnest and before Defendants filed their Answer to the Complaint, and they reached an agreement on the monetary and most other material terms within a matter of months in January 2021, which were never disturbed or refuted by either party.

All of the parties' settlement discussions and exchanges occurred exclusively between counsel for Defendants and counsel for Plaintiff, Anne Seelig, Esq., a partner at the Lee Litigation Group. Their discussions resulted in a written settlement agreement memorializing their agreement on the monetary amount and other material terms. In May 2021, Ms. Seelig's law partner, C.K. Lee, Esq., inexplicably intervened, and without engaging Defendants' counsel in any discussion or giving any notice, unilaterally struck

and re-wrote nearly all of the negotiated, finalized, and agreed-upon terms of the agreement. Having upended the parties' settlement agreement, Mr. Lee delivered his gutted version of the agreement to Defendants with a message that, in essence, demanded a complete capitulation. Before this blindsiding maneuver, neither Mr. Lee nor his partner, Ms. Seelig, ever indicated that Plaintiff was dissatisfied with any of the terms—material and non-material alike—to which the parties had previously agreed. Rather, Mr. Lee's actions reflect only his own belated realization that his partner negotiated a deal with which he is not satisfied. This type of internal disagreement between counsel does not constitute a legitimate legal basis to renege on a settlement agreement.

For these reasons, and as further explained below, the Court should enter an Order granting Defendants' Motion to Enforce Settlement in its entirety and direct Plaintiff to execute the settlement agreement.

## STATEMENT OF FACTS

**A.  History of the Parties' Settlement Negotiations.**

Plaintiff commenced this action on February 28, 2020. (DE 1). Before Defendants filed their Answer, the parties agreed to explore an early resolution of Plaintiff's individual claims without expending party and judicial resources on litigation, including discovery and briefing on the appropriateness of class treatment. (Kosovych Dec. ¶ 2; *see* DE 13). Over a series of extensions granted by the Court for Defendants' time to respond to the Complaint (*see* DE 13, 15, 17, 21), the parties engaged in settlement discussions and

entered into a Confidentiality Stipulation for Settlement Purposes to enable an informal exchange of information for settlement purposes only. (Kosovych Dec. ¶ 2). Throughout all of the above settlement discussions, counsel for Defendants communicated exclusively with Anne Seelig, a partner at the Lee Litigation Group. (Kosovych Dec. ¶ 3).

On July 22, 2020, Defendants voluntarily produced documents relating to Plaintiff's claims along with related information concerning the circumstances of his employment.[1] (Kosovych Dec. ¶ 4). After several periods of delay due to Plaintiff's non-responsiveness, and after additional discussions between counsel, on December 18, 2020, Defendants conveyed a monetary settlement offer to Plaintiff. (Kosovych Dec. ¶ 5). Plaintiff, through counsel Ms. Seelig, orally accepted the offer on January 28, 2021 in a telephone conference between Counsel for Plaintiff and Counsel for Defendants. (Kosovych Dec. ¶ 5).

Initially, Plaintiff proposed to dismiss the action without prejudice by filing a Notice of Voluntary Dismissal, followed by execution of a private settlement between the parties. Defendants' agreement to proceed in this manner was contingent upon Plaintiff's agreement to a general release, confidentiality, non-disparagement, and no-rehire provisions. (Kosovych Dec. Exhibit 1). The parties memorialized their agreement on material terms in an email between counsel, dated February 12, 2021, which included

---

[1] Defendants' records showed that Plaintiff self-reported his work hours, worked a 35-hour work week, and was fully paid for all hours worked as reported by him. (Kosovych Dec. ¶ 4).

additional material terms—a general release, confidentiality, non-disparagement, and no-rehire provisions. (Kosovych Dec. Exhibit 1). The email exchange between counsel included Ms. Seelig's acceptance of the deal ("[O]ur client is on board. Please confirm your client is as well and we will file a Notice of Dismissal without prejudice"), and Defendants' confirmation of the agreement ("Thank you, Anne. To confirm, you will file a Notice of Dismissal without prejudice and the parties will enter into a settlement agreement that will include a general release, confidentiality, nondisparagement, and no re-hire provisions."). (Kosovych Dec. Exhibit 1).

On February 16, 2021, Plaintiff filed a Notice of Voluntary Dismissal (DE 24), and Defendants prepared a written settlement agreement memorializing the terms of the parties' agreement. (Kosovych Dec. ¶ 7). Before Defendants provided the draft agreement to Plaintiff, on March 5, 2021, Judge Broderick directed the parties to submit the settlement agreement for approval pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015), which necessitated certain modifications to the written agreement. (DE 28). The parties exchanged several revisions to a draft agreement, and, on April 29, 2021, the parties reached an agreement on all revised settlement terms except one—Paragraph 6(b), requiring certain representations by Plaintiff's counsel. (Kosovych Dec. ¶ 7, Exhibit 2). Specifically, Defendants proposed the following provision:

> King's Attorneys represent that, other than King and Brickzaida Aponte, they do not currently represent any other individuals in connection with any claim, action, charge, complaint, or proceeding of

4

> any kind (on the individual's behalf or on behalf of any other person or entity or on behalf of or as a member of any alleged class or persons), that is presently pending or that could be asserted in any judicial or arbitral forum or before any Government Agency, against or involving any of the Releasees. King's Attorneys each further represent that they have filed no other lawsuits or initiated any other proceedings against Defendants that remain pending other than the Civil Action and Brickzaida Aponte, Index No. 152683/2021 (N. Y. Sup., N.Y. County) ("Aponte Action"); *that they are not currently involved in, aware of, or conducting any investigation related to facts that might reasonably be viewed as potentially giving rise to an action that might be filed pursuant to the Fair Labor Standards, New York Labor Law, or other similar statutes, regulations, and orders governing the payment of wages to employees; and that they have no present intention of conducting such an investigation or pursuing such an action, other than the Aponte Action.*

(Kosovych Dec. ¶ 9, Exhibit 2) (italics added).

**B.    Plaintiff's Counsel—Not Plaintiff—Reneged On the Settlement Agreement Over Language Affecting Only Lee Litigation Group.**

Throughout all of the above settlement discussions, counsel for Defendants communicated exclusively with Anne Seelig, a partner at the Lee Litigation Group. (Kosovych Dec. ¶ 3). Yet in April 2021, C.K. Lee joined for the first time the parties' settlement discussions that had been ongoing since July 2020. (Kosovych Dec. ¶ 8). After Mr. Lee conceded in a meet and confer with Defendants on or around April 30, 2021 that only one term remained to be resolved, (Kosovych Dec. ¶ 8), Defendants proposed a further revision to Paragraph 6(b) to eliminate the sole source of Plaintiff's Counsel's objections:

> King's Attorneys represent that, other than King and Brickzaida Aponte, they do not currently represent **or have any present intention of representing** ~~any~~ other individuals in connection with any claim,

5

action, charge, complaint, or proceeding of any kind (on the individual's behalf or on behalf of any other person or entity or on behalf of or as a member of any alleged class or persons), that is presently pending or that could be asserted in any judicial or arbitral forum or before any Government Agency, against or involving any of the Releasees.  King's Attorneys each further represent that they have filed no other lawsuits or initiated any other proceedings against Defendants that remain pending other than the Civil Action and Brickzaida Aponte, Index No. 152683/2021 (N. Y. Sup., N.Y. County) ("Aponte Action"); ~~that they are not currently involved in, aware of, or conducting any investigation related to facts that might reasonably be viewed as potentially giving rise to an action that might be filed pursuant to the Fair Labor Standards, New York Labor Law, or other similar statutes, regulations, and orders governing the payment of wages to employees; and that they have no present intention of conducting such an investigation or pursuing such an action, other than the Aponte Action.~~

(Kosovych Dec. Exhibit 3).  Mr. Lee rejected the provision as revised by Defendants on April 30, stating that the above italicized and highlighted language in Paragraph 6(b) "limit[ed] [his firm's] right to pursue class or collective claims."  (Kosovych Dec. Exhibit 4).  Then, on May 2, 2021, Mr. Lee rejected the settlement altogether by returning a handwritten markup of the agreement in which he struck nearly all of the material terms that had been already agreed upon.  (Kosovych Dec. Exhibit 5).  With his unilaterally stripped down version of the agreement negotiated between Defendants and Ms. Seelig on behalf of Mr. King, Mr. Lee included a message stating that his edits were not negotiable and demanded execution copies by the end of the following day.  (Kosovych Dec. Exhibit 5).  In an attempt to appease Mr. Lee and finalize the settlement agreement, on May 10, 2021, Defendants deleted the language in Paragraph 6(b) and circulated the

6

agreement without the language Mr. Lee (and not his client) personally found offensive. (Kosovych Dec. Exhibit 6). Mr. Lee still refused to compromise on his own terms.  In short, Mr. Lee refused to accept anything less than a complete capitulation to his demands, and did not relent despite Defendants' stated willingness to delete the language in Paragraph 6(b) that, ostensibly, was the only provision in dispute. (Kosovych Dec. Exhibit 7).  After a May 12, 2021 telephone conference with Judge Broderick held at Defendants' request, the parties were referred to Magistrate Judge Aaron for a settlement conference, which was held on June 29, 2021.  (DE 35, 36, 7/19/21 Minute Entry).  The parties were unable to resolve their dispute even with Magistrate Judge Aaron's assistance.

## ARGUMENT

**A.      Applicable Standard.**

The New York Court of Appeals has made abundantly clear in *Kolchins III* that, under New York law, a binding contract can be formed by an email exchange notwithstanding the fact that the parties tried but failed to memorialize their understanding in a more formal instrument.  In order to avoid being bound by an oral or informal agreement, a party must give "forthright, reasonable signals that it means to be bound only by a [formal] written agreement" in order to avoid being bound by an oral or informal agreement.  *Kowalchuk v. Stroup*, 61 A.D.3d 118, 122–23 (1st Dep't 2009) (citing

*Jordan Panel Sys. Corp. v. Turner Constr. Co.*, 45 A.D.3d 165, 169 (1st Dep't 2007)) (internal quotation marks omitted).

New York courts distinguish between a "preliminary agreement contingent on and not intended to be binding absent formal documentation" (which is not enforceable), and a "binding agreement that is nevertheless to be further documented" (which is enforceable with or without the formal documentation). *Id.* at 123 (citing *Hostcentric Techs. Inc. v. Republic Thunderbolt, LLC*, No. 04 CIV. 1621 (KMW), 2005 WL 1377853, at *5 (S.D.N.Y. June 9, 2005)). The former is established by a showing that a party made an explicit reservation that there would be no contract until the full formal document is completed and executed. However, "the mere fact that the parties intended to draft formal settlement papers is *not alone* enough to imply an intent not to be bound except by a fully executed document." (*Id.*) (citing *Hostcentric*, 2005 WL 1377853).

In determining whether a settlement agreement is enforceable in the absence of a formal writing, courts consider four non-exclusive factors: (1) whether there is any express reservation of the right not to be bound absent a signed writing; (2) whether there has been partial performance of the settlement contract; (3) whether there has been agreement on all the terms of the alleged settlement contract; and (4) whether the agreement is of a type usually committed to writing. *Powell v. Omnicom*, 497 F.3d 124, 129 (2d Cir. 2007) (citations omitted); *Conway v. Brooklyn Union Gas Co.*, 236 F. Supp. 2d 241, 248 (E.D.N.Y. 2002) (citation omitted).

B.  *Kolchins III* **and Its Progeny Confirms the Email Exchanges Between Plaintiff and Defendants Created a Binding Settlement Agreement.**

As shown above, New York courts consistently hold that email exchanges can create binding contracts, even if one party alleges no agreement was reached. *Kolchins III*, 31 N.Y.3d at 107-08; *Forcelli v. Gelco Corp.*, 109 A.D.3d 244, 251–52 (2d Dep't 2013) (affirming enforcement of settlement agreement where email message to plaintiff's counsel from automobile insurer's claims adjuster confirming oral settlement constituted a binding written settlement agreement because email set forth material terms of agreement and contained an expression of mutual assent, settlement was not conditioned on any further occurrence, claims adjuster had apparent authority to settle, email was "subscribed" within meaning of statute, and email followed face-to-face mediation and subsequent follow-up telephone calls between adjuster and plaintiff's counsel).

In *Kolchins III*, the Court of Appeals affirmed the First Department's decision enforcing an agreement to extend an employment contract created exclusively over email under circumstances similar to the facts here. *Kolchins III*, 31 N.Y.3d at 107–10. The chief executive officer of the defendant sent the plaintiff, a multi-year employee of the company, an email confirming the terms of the plaintiff's new proposed employment contract that would have extended the plaintiff's employment for an additional three years. *Id.* at 104. The subject field of the email stated "In writing," and the body of the email confirmed the length of the contract extension, the terms of the base salary and bonus. *Id.* One month later, the plaintiff responded by email to the chief executive

9

stating, "I accept, pls send contract" to which the chief executive officer replied, "Mazel. Looking forward to another great run." *Id.*

Then, the plaintiff and the defendant engaged "in an unsuccessful attempt to reduce the parties' mutual understanding to a more formal written instrument" (*id.*), after which the plaintiff commenced an action in the Supreme Court, New York County, asserting a breach of contract claim based on his contention that the parties had entered into a valid and binding contract by way of their email exchange. *Kolchins v. Evolution Mkts. Inc. (Kolchins I)*, No. 653536/2012, 2013 WL 4494380, at *3 (Sup. Ct. N.Y. Cnty. Aug. 19, 2013), *modified, aff'd, in part, dismissed, in part*, 128 A.D.3d 47 (1st Dep't 2015), *aff'd*, 31 N.Y.3d 100 (2018), *aff'd as modified*, 182 A.D.3d 408 (1st Dep't 2020). The trial court denied the defendant's motion to dismiss and the First Department affirmed. *Kolchins v. Evolutions Mkts., Inc. (Kolchins II)*, 128 A.D.3d 47, 65 (1st Dep't 2015); *Kolchins I*, 2013 WL 4494380, at *5. Thereafter, the Court of Appeals affirmed the First Department's decision. *Kolchins III*, 31 N.Y.3d at 107-08. Specifically, the Court of Appeals determined that the defendant's initial email, which "outlined the core terms" of the agreement apart from a minor, non-substantive outstanding issue, constituted a valid offer, and the parties' subsequent exchange (including the emails stating "I accept" and "Mazel") constituted valid acceptance. *Id.* ("Affording [the] plaintiff the benefit of every favorable inference, this exchange . . . coupled with a forward looking statement about the next stage of the parties' continuing relationship—sufficiently evinces an objective manifestation of an

10

intent to be bound for purposes of surviving a motion to dismiss.") (*Id.*). As to the subsequent correspondence demonstrating that the parties disagreed on certain terms of the contract, the Court explained that this constituted no more than "indefiniteness" as to those terms, which "d[id] not conclusively refute contract formation" and did not "render[] the purported contract invalid as a matter of law." *Id.* at 108.

The analysis by the Court of Appeals is on point here. A binding settlement agreement between Plaintiff and Defendants was formed based on the conveyance by Defendants of an offer on December 18, 2020; Plaintiff's acceptance of that offer on January 28, 2021; and the subsequent email exchange confirming the material terms, and in several iterations of drafts. All of these facts conclusively establish the parties each intended to be bound by the agreement, notwithstanding the absence of a formal signed settlement agreement.

### C.     **The Parties' Settlement Agreement Is Enforceable.**

Each of the four *Powell* factors favors enforcement of the settlement agreement reached by Plaintiff and Defendants. First, "neither party expressed a reservation of the right not to be bound in the absence of an executed agreement." *Conway*, 236 F. Supp. 2d at 249 (holding this favored enforceability). Critically, none of the parties' correspondence throughout the months of settlement discussions—including after January 28, 2021, when they memorialized their agreement in an email—indicated an intent not to be bound until a formal settlement agreement was executed by both parties.

Nor did the drafts circulated between counsel contain a generally applicable express reservation.  *See Int'l Telemeter Corp. v. Teleprompter Corp.*, 592 F.2d 49, 55 (2d Cir. 1979) (no express reservation on face of drafts suggested agreement reached even without execution).

Second, partial performance occurred "'in the sense that both sides, relying on the apparent settlement, did not resume active litigation of the case.'"  *Conway*, 236 F. Supp. 2d at 250 (quoting *Alvarez v. City of New York*, 146 F. Supp. 2d 327, 336 (S.D.N.Y. 2001) (Chin, J.)).  Perhaps most telling, on February 16, 2021, Plaintiff filed a Notice of Voluntary Dismissal pursuant to FRCP 41(a)(1)(A)(i), dismissing without prejudice all of Plaintiff's claims against Defendants (DE 24), *without any reservation of rights to vacate the dismissal* in the event no formal agreement was executed and without any assurances that either party would imminently execute a formal agreement.  In the same vein, Defendants detrimentally relied on Plaintiff's representations by incurring significant sums negotiating and reducing the settlement agreement to writing, only to have Plaintiff's counsel effectively renege at the eleventh hour.  Accordingly, this factor provides another justification for enforcing the settlement agreement.  *See Alvarez*, 146 F. Supp. 2d at 336 (finding this factor favored enforceability where reliance was shown).

Third, as stated above, not only did the parties agree upon all of the material terms (e.g., monetary consideration and the scope of the release), but also they effectively agreed upon all terms after Defendants agreed to delete the language in Paragraph 6(b)

that Plaintiff's counsel found unacceptable. This factor favors enforcement. *See Conway*, 236 F. Supp. 2d at 251; *Alvarez*, 146 F. Supp. 2d at 336–37 ("having accepted the terms of the agreement, plaintiff cannot allege that other terms remained").

Fourth, the written draft of the settlement most certainly would have been finalized had Mr. Lee not stepped in and suddenly reversed course on account of his – not his client's – personal motivations. This factor, too, favors enforcement. *Conway*, 236 F. Supp. 2d at 251–52 (citing *Alvarez*, 146 F. Supp. 2d at 337).

In sum, all of the relevant factors demonstrate that Plaintiff, through his counsel, agreed to be bound by the terms of the settlement agreement. If anything, the facts support the conclusion that Mr. Lee's contentions actually are a thinly veiled attempt to rewrite an agreement to which his partner assented because, upon further review, he apparently is dissatisfied with one of its terms affecting his firm (and not his client) and believes his partner made a mistake. *See Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 445 (2d Cir. 2005). Buyer's remorse – especially that of counsel, and not plaintiff himself - does not form a basis to vitiate a legally enforceable settlement agreement. *See Conway*, 236 F. Supp. 2d at 248–52. Plaintiff and his counsel cannot now renege on the settlement agreement where every material term had been previously agreed to by the parties.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court enter an Order granting their Motion to Enforce Settlement in its entirety and direct

Plaintiff to execute the settlement agreement in which Defendants acquiesced by deleting language forming the sole basis of Mr. Lee's objections but otherwise preserved the material terms that had long been finalized (*see* Kosovych Dec. Exhibit 6).

Dated: July 27, 2021

                                              EPSTEIN BECKER & GREEN, P.C.

By:     */s/ Adriana S. Kosovych*

Jeffrey H. Ruzal
Adriana S. Kosovych
875 Third Avenue
New York, New York 10022
Tel: (212) 351-4500
Fax:(212) 878-8600
JRuzal@ebglaw.com
AKosovych@ebglaw.com

*Attorneys for Defendants FedCap Rehabilitation Services, Inc. and Wildcat Service Corporation*

14