NEW YORK DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HAROLD KING,<br>*on behalf of himself, FLSA Collective Plaintiffs, and the Class*,<br><br>                              Plaintiff,<br><br>- against -<br><br>FEDCAP REHABILITATION SERVICES, INC., and WILDCAT SERVICE CORPORATION,<br><br>                              Defendants. | Case No.: 20-CV-1784 (VSB)<br>(ADS) |

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO ENFORCE SETTLEMENT

EPSTEIN BECKER & GREEN, P.C.
875 Third Avenue
New York, New York 10022
(212) 351-4500
*Attorneys for Defendant FedCap Rehabilitation Services, Inc. and Wildcat Service Corporation*

FIRM:53779816

# **TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .............................................................................................................................. 3

A. Based on the Totality of the Circumstances, the Parties' Settlement Agreement Memorialized in E-mail Correspondence Subscribed By Counsel Satisfies CPLR 2104 Creating an Enforceable Settlement Agreement. ..................................... 3

B. The Settlement Is Enforceable Notwithstanding the Presence of a Merger Clause in the Parties' Formal Written Settlement Agreement. ............. 7

C. Neither CPLR 5003-b nor *Cheeks* Preclude Enforcement of the Settlement. ............ 9

    1. CPLR 5003-B ................................................................................................. 9

    2. *Cheeks v. Freeport Pancake House, Inc.* ...................................................... 10

CONCLUSION ........................................................................................................................ 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Barbecho v. M.A. Angeliades, Inc.*,
  2017 WL 1194680 (S.D.N.Y. Mar. 30, 2017) ...........................................................................11

*Bergassi, LLC v. Ikon Solution, Inc.*,
  875 N.Y.S.2d 818 (N.Y. Sup. Ct. Westchester Cty., 2008) ...................................................3, 5

*Cheeks v. Freeport Pancake House, Inc.*,
  796 F.3d 199 (2d Cir. 2015) ............................................................................................ passim

*Diarassouba v. Urban*,
  71 A.D.3d 51 (2d Dep't 2009) ..................................................................................................5

*Forcelli v. Gelco Corp.*,
  109 A.D.3d 244 (2d Dep't 2013) ..............................................................................................4

*Hernandez v. Fresh Diet, Inc.*,
  2017 WL 483828 (S.D.N.Y. Oct. 25, 2017) .............................................................................8

*Junjiang Ji v. Jling Inc.*,
  2019 WL 1441130 (E.D.N.Y. Mar. 31, 2019) ........................................................................14

*Kaczmarcysk v. Dutton*,
  414 Fed. Appx. 354 (2d Cir. 2011) ...........................................................................................8

*Kataldo v. Atlantic Chevrolet Cadillac*,
  161 A.D.3d 1059 (2d Dep't 2018) ............................................................................................7

*Kolchins v. Evolution Mkts., Inc. (Kolchins III)*,
  31 N.Y.3d 100 (2018) ..................................................................................................3, 4, 5, 7

*Mora v. Bareburger Group, LLC*,
  2020 WL 5369051 (E.D.N.Y. Nov. 5, 2020) ....................................................................13, 14

*Nieves v. Cmty. Choice Health Plan of Westchester, Inc.*,
  2011 WL 5533328 (S.D.N.Y. Aug. 31, 2011) ..........................................................................8

*Nunez v. Shinobi NY LLC*,
  2013 WL 12107728 (S.D.N.Y. Sept. 13, 2019) ........................................................................8

*Yunjian Lin v. Grand Sichuan 74 St Inc.*,
  2016 WL 5497837 (S.D.N.Y. June 23, 2016) ........................................................................14

iii

**Statutes, Rules & Regulations**

N.Y. C.P.L.R. 2104 .................................................................................................................1, 3, 4, 5

N.Y. C.P.L.R. 5003-b ............................................................................................................1, 2, 9, 10

Fed. R. Civ. P. 41(a)(1)(A)(ii) ................................................................................................................5

## PRELIMINARY STATEMENT

In their moving papers, Defendants Fedcap Rehabilitation Services, Inc. ("Fedcap") and Wildcat Service Corporation ("Wildcat") ("Defendants") presented facts and controlling case law authority showing that the totality of the parties' settlement exchanges and communications formed a settlement agreement that is enforceable as a matter of law.

In his opposition, Plaintiff attempts to create the illusion that the settlement negotiations between counsel regarding material terms occurred piecemeal, never resulting in a binding settlement agreement.  Against this misleading backdrop, Plaintiff dissects the parties' negotiations and argues that the following elements bar enforcement of the parties' settlement:  (1) CPLR 2104's requirement that an agreement must be reduced to a signed formal writing; (2) the existence of a merger clause in the settlement agreement; (3) the requirements under CPLR 5003-b governing confidentiality agreements; and (4) this action's status as a Fair Labor Standards Act ("FLSA") collective action requiring approval of the settlement agreement under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).  Each of these arguments fails for several reasons.

*First*, Plaintiff's argument that CPLR 2104 bars enforcement of the settlement agreement ignores the bulk of communications between counsel following the initial offer and acceptance of settlement that memorialized material terms and thus formed a binding and enforceable settlement agreement.  *Second*, Plaintiff fails to provide

applicable legal authority supporting his contention that the existence of a merger clause in the parties' agreement alone forecloses enforcement, and in any event, it overlooks other factors clearly indicating Plaintiff's intent to be bound even in the absence of formal written agreement. *Third*, the parties eliminated confidentiality as a provision in their agreement after the Court ordered them to submit their settlement agreement for approval under *Cheeks*, and therefore, CPLR 5003-b does not apply. *Fourth*, Plaintiff's assertion that the absence of *Cheeks* approval inappropriately glosses over the fact that the parties, intending to be bound by their settlement agreement, were working towards submission for approval.

In sum, Plaintiff asks the Court to consider disjunct pixels of the parties' settlement communications in isolation and to find that none of them formed an enforceable settlement agreement. But the complete picture revealed by the totality of the communications and actions by Plaintiff and Defendants leads to a single conclusion: the parties agreed to settle for $10,000, expressed mutual assent on material terms, and fully intended to be bound by their agreement.

For these reasons, and for the reasons set forth in Defendants' moving brief, the Court should enter an Order granting Defendants' Motion to Enforce Settlement in its entirety to enable the parties to submit their settlement agreement to the Court for its review pursuant to *Cheeks*.

Firm:53779816

# ARGUMENT

### A. Based on the Totality of the Circumstances, the Parties' Settlement Agreement Memorialized in E-mail Correspondence Subscribed By Counsel Satisfies CPLR 2104 Creating an Enforceable Settlement Agreement.

Plaintiff makes much ado of the requirement pursuant to CPLR 2104 that a settlement agreement between parties must be set forth in a formal writing subscribed by the parties or their counsel. Plaintiff's arguments boil down to a series of logical fallacies, and the cases upon which Plaintiff relies are either distinguishable or were decided before the Court of Appeals clarified the ways in which present day e-mail settlement communications between counsel may meet the requirements of CPLR 2104, notwithstanding the absence of a formal written agreement. *Kolchins v. Evolution Mkts., Inc. (Kolchins III)*, 31 N.Y.3d 100 (2018).

For example, Plaintiff cites *Bergassi, LLC v. Ikon Solution, Inc.*, 875 N.Y.S.2d 818 (N.Y. Sup. Ct. Westchester Cty., 2008), and argues that the holding of a trial court in Westchester County Supreme Court decided seven years before the Court of Appeals addressed the issue in *Kolchins III* forecloses enforcement here because the January 28, 2021 oral acceptance of a settlement offer that was extended orally on December 18, 2021 does not meet the criteria for judicial enforcement under CPLR 2104, "regardless of what may have transpired subsequently to January 28." (Pl. Opp. Br. at p. 1-2). Stated differently, this strawman argument asserts that because the court in *Bergassi* denied

3

enforcement after reviewing the parties' written communications and actions subsequent to their oral settlement reached in open court, this Court should do the same.

To be clear, Defendants do not contend that the December 18, 2020 and January 28, 2021 oral offer and acceptance alone formed a binding and enforceable settlement, as Plaintiff contends. (Pl. Opp. Br. at p. 1). Rather, it is the totality of the oral offer and acceptance and the subsequent exchange of counsel's e-mail communications (1) confirming the parties' agreement to settle for the amount of consideration offered and accepted on January 28 (*i.e.*, indisputably and unchangingly $10,000), (2) memorializing other material terms of the settlement agreement (*i.e.*, general release, no re-hire, confidentiality, and non-disparagement)[1], and (3) containing counsel's closing salutations, that constitute a fully subscribed written agreement satisfying the requirements of CPLR 2104. *Kolchins III*, 31 N.Y.3d at 107-08 ("this [e-mail] exchange … coupled with a forward looking statement about the next stage of the parties' continuing relationship—sufficiently evinces an objective manifestation of an intent to be bound"); *Forcelli v. Gelco Corp.*, 109 A.D.3d 244, 251–52 (2d Dep't 2013) (affirming enforcement of settlement agreement where email message confirming oral settlement, setting forth material terms of agreement, containing expression of mutual assent, and subscribed

---

[1] Initially, Plaintiff proposed to dismiss the action without prejudice by filing a Notice of Voluntary Dismissal, followed by execution of a private settlement between the parties.

4

within meaning of statute, constituted a binding written settlement).[2] Further, a key factor distinguishes *Bergassi* from the facts in this case: there were repeated references to a "proposed settlement" in the parties' correspondence. Unlike the parties in *Bergassi*, Plaintiff and Defendants not only confirmed the terms of the settlement in writing through e-mails, they also took additional affirmative steps to effectuate the settlement, including Plaintiff's filing a Notice of Voluntary Dismissal pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure. (DE 24).[3]

As to Plaintiff's argument that the correspondence between counsel through February 12, 2021 "does not even contain the monetary sum for which the claims were supposedly settled" (Pl. Opp. Br. at 2), this too inappropriately isolates a fragment of the parties' settlement communications, and any argument by Plaintiff that he never agreed to the monetary consideration is disingenuous, at best—particularly given that Plaintiff filed a Notice of Voluntary Dismissal after the parties reached an agreement. Had Plaintiff truly believed there was no settlement agreement because the parties had not agreed upon the monetary consideration, he would not have dismissed his own case—at

---

[2] Plaintiff's juxtaposition of *Kolchins III* and CPLR 2104 (Pl. Opp. Br. at p. 1), creates a false dichotomy. The two are not inconsistent. Instead, the Court of Appeals interpreted CPLR 2104 in the context of present day communications between counsel, and concluded that e-mails may form binding agreements.

[3] Plaintiff's reliance on *Diarassouba v. Urban*, 71 A.D.3d 51 (2d Dep't 2009), similarly is misplaced. The sole issue presented on appeal was whether the lower court's refusal to permit the terms of a settlement to be placed on the record prior to the taking of the jury verdict constituted error and rendered the purported settlement unenforceable. The Appellate Division answered the question in the affirmative, and also noted that "defense counsel remained silent throughout the plaintiff's requests to put the settlement on the record," and so there was no acceptance of the settlement to form a valid settlement agreement. *Diarassouba*, therefore, is inapposite.

5

a minimum, he would risk giving up some of his potential damages recovery based on the running statute of limitations. Additionally, all of e-mails attaching the long-form written settlement agreement following the February 10 through 12, 2021 e-mail correspondence identified the same monetary amount—$10,000—in the agreement as the payment to Plaintiff as consideration for the settlement. (*See* Kosovych Dec. Ex. 2, at p. 16 ¶ 1 ("the Companies shall cause to be delivered to King's Attorneys payments in the total gross amount of ten thousand dollars and zero cents ($10,000.00), payable as follows …"), p. 17 ¶ 2 ("King understands and agrees that Plaintiff would not receive the monies specified in paragraph 1 above, except for King's execution of this Agreement and the fulfillment of the promises contained herein.")). Indeed, Plaintiff's own initial short-form settlement agreement provided to Defendants in an effort to expedite fulfillment of the deal the parties reached contained this same monetary amount. *See* Kosovych Reply Dec. Ex. 3, at p. 6 ¶ 1 ("In consideration for Plaintiff signing this Agreement and complying with its terms, Defendants agree to pay to Plaintiff the total sum of Ten Thousand Dollars and Zero Cents ($10,000.00) ("Settlement Sum") apportioned as follows…"), p. 7 at ¶ ("Plaintiff understands and agrees that Plaintiff would not receive the monies specified in paragraph '1' above, except for Plaintiff's execution of this Agreement and the fulfillment of the promises contained herein.")). Even Mr. Lee's May 2, 2020 slashed version of the settlement agreement left intact the same $10,000 monetary payment to Plaintiff as consideration for the settlement agreement. (Kosovych Dec. Ex. 5, at p. 2 ¶ 5).

6

Plaintiff devotes three pages to his next argument, that the parties' communications after February 12, 2021—inappropriately divorced from everything leading up to it—did not create a binding settlement agreement because on correspondence between counsel April 29 and 30, 2021 did not contain an express offer and acceptance. (Pl. Opp. Br. at pp. 6-9). But this cherry-picked segment excised from the parties' entire communications following their agreement to settle cannot be viewed in isolation, and all of the correspondence and drafts exchanged between counsel following their February 12, 2021 settlement agreement demonstrate that their minor disagreements on certain non-material terms "d[o] not conclusively refute contract formation" and do not "render[] the purported contract invalid as a matter of law." *Kolchins III*, 31 N.Y.3d at 108.[4] As stated above, the material terms of the settlement agreement—consideration, release, and no re-employment[5]—substantively remained unchanged throughout the parties' communications and exchanges of drafts.

B.  **The Settlement Is Enforceable Notwithstanding the Presence of a Merger Clause in the Parties' Formal Written Settlement Agreement.**

Plaintiff points to a merger clause in the long-form settlement agreement the parties were finalizing and argues that "this clause standing alone undercuts Defendants'

---

[4] *Kataldo v. Atlantic Chevrolet Cadillac*, 161 A.D.3d 1059 (2d Dep't 2018), cited at pages 8-9 of Plaintiff's opposition, is inapposite because there is a writing subscribed by counsel for Plaintiff and Defendants confirming the terms of their settlement agreement.

[5] The other terms to which the parties had agreed (*i.e.*, confidentiality, non-disparagement) were eliminated based on the Court's order to submit the agreement for its review pursuant to *Cheeks*.

7

argument that an agreement was reached notwithstanding that an agreement had yet to be formalized." (Pl. Opp. Br. at p. 9). However, the presence of a merger clause is not dispositive on the enforceability of a settlement agreement. Indeed, Plaintiff's own cases refute that assertion. *See Hernandez v. Fresh Diet, Inc.*, 2017 WL 483828 (S.D.N.Y. Oct. 25, 2017) (denying enforcement of an alleged settlement agreement because, in addition to a merger clause, the parties' correspondence referring to the agreement as "proposed" and several other factors clearly signaled an intent not to be bound); *Kaczmarcysk v. Dutton*, 414 Fed. Appx. 354 (2d Cir. 2011) (noting that in determining whether to enforce a settlement agreement, a court must consider four factors); *Nieves v. Cmty. Choice Health Plan of Westchester, Inc.*, 2011 WL 5533328 (S.D.N.Y. Aug. 31, 2011) (stating that the intent to be bound controls, and the intention to commit an agreement to writing, standing alone, will not prevent contract formation, but denying enforcement based on, among other reasons, merger clause *and other provisions* in a draft proposed settlement clearly evidenced intent not to bound until the agreement was fully executed).[6]

---

[6] Plaintiff's reliance on *Nunez v. Shinobi NY LLC*, 2013 WL 12107728 (S.D.N.Y. Sept. 13, 2019), also is misplaced. Whereas in *Nunez*, the parties simply "suspended discovery activities during the negotiations," Plaintiff attempted to affirmatively dismiss the action based on the settlement agreement between the parties. (DE 24). Plaintiff's hollow argument that he did not intend to be bound because he could have re-filed his action (Pl. Opp. Br. at pp. 10-11) strains credulity, including because Plaintiff would be risking running out of time to re-file under the statute of limitations.

As there are multiple other factors favoring enforcement of the parties' settlement agreement, the Court should grant Defendants' motion notwithstanding the presence of a merger clause.

**C.    Neither CPLR 5003-b nor *Cheeks* Preclude Enforcement of the Settlement.**

Plaintiff contends that two prerequisites were not fulfilled with respect to the parties' settlement, barring enforcement:  (1) the requirement under CPLR  5003-b that plaintiffs releasing harassment claims under the New York State and New York City Human Rights Laws must express a preference for confidentiality, with a seven-day right to revoke; and (2) the requirement under *Cheeks* that settlements of claims for wages under the Fair Labor Standards Act must be approved by a Court of the Department of Labor.  (Pl. Opp. Br. at pp. 5-6, 11-14).  Both are red herrings, and neither does anything to support Plaintiff's opposition to Defendants' motion to enforce the settlement.

**1.    CPLR 5003-b**

Plaintiff fails to point to any statutory or case law authority to support his contention that he "lacked the legal capacity to definitely agree to non-disparagement and confidentiality" because of CPLR 5003-b.  (Pl. Opp. Br. at 5).  CPLR 5003-b says nothing about legal capacity to enter into a contract.  Further, his argument that the 21-day consideration and seven-day revocation period had not yet run renders the parties' agreement unenforceable puts the cart before the horse.

9

By its plain language, CPLR 5003-b does not render a settlement agreement unenforceable unless and until an employer includes in a settlement agreement a term that would prevent the disclosure of the underlying facts and circumstances of an employee's discrimination claim or the action and does not (i) provide that term to all parties, (ii) provide twenty-one days for the employee to consider and confirm his/her preference, (iii) include that term in the settlement agreement, and (iv) provide for a seven-day revocation period of the confidentiality agreement. *See* CPLR 5003-b. None of these factors exists here. While the parties initially may have agreed to include a confidentiality provision in their agreement, they abandoned confidentiality as a material term following the Court's directive to submit the agreement for approval under *Cheeks*. (*See, e.g.*, Kosovych Dec. Ex. 1, at pp. 16-25; Kosovych Reply Dec. Ex. 2; Kosovych Reply Dec. Ex. 3, at pp. 6-11). Plaintiff's deliberate omission of these facts by targeting his arguments to the parties' communications only through February 12, 2021 highlights the weaknesses in his argument on this point.

### 2.  *Cheeks v. Freeport Pancake House, Inc.*

Plaintiff leads his next argument with the declaration that "the general release Defendants were also demanding could not have received judicial approval under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015), making the purported settlement agreement unenforceable." (Pl. Opp. Br. at 5). Yet, he overlooks the fact that the parties' agreement to settle encompassed *all* of Plaintiff's individual claims, *i.e.*,

10

alleged unpaid overtime under the FLSA and New York Labor Law, a spread-of-hours claim, wage notice and wage statement violation claims, and race discrimination and retaliation claims under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"). (*See* First Amended Class and Collective Action Complaint (DE 10)). Logically and permissibly, the scope of the release agreed to by the parties was broader than it would be in a case involving only claims under the FLSA because it encompassed claims of discrimination and retaliation.

Not a single case cited by Plaintiff in his opposition supports the proposition that *Cheeks* prohibits settlement agreements containing broad releases where the settlement covers FLSA claims in addition to other non-wage and hour claims. Instead, all of Plaintiff's cases involved only FLSA and state law wage and hour claims and derivative claims, and none of them included discrimination claims under the NYSHRL or NYCHRL. *See, e.g.*, *Barbecho v. M.A. Angeliades, Inc.*, 2017 WL 1194680, *1 (S.D.N.Y. Mar. 30, 2017) (collective action brought under the FLSA and NYLL with a derivative breach of contract claim); *Leon-Martinez v. Central Café & Deli*, 15-cv-7942, Complaint, DE 1 (S.D.N.Y. October 7, 2015) (asserting claims under the FLSA and NYLL). Plaintiff's argument regarding the release provision thus lacks factual and legal support.

Plaintiff further contends that "the *Cheeks* rule that no FLSA settlement is enforceable until approved by a court or the Department of Labor" is dispositive on the

11

issue and bars enforcement here. (Pl. Opp. Br. at pp. 11-14). Yet, in response to the Court's order (DE 26), Plaintiff submitted the following statement to the Court:

> As the Court noted at Dkt. 26, "parties may not privately settle FLSA claims with prejudice absent approval from the Department of Labor or the district court." *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). However, here, Plaintiff filed a notice of dismissal without prejudice, for which Court approval is not required under *Cheeks*.
>
> In a similar FLSA action, *Canelas v. World Pizza, Inc., et al.*, Hon. Edgardo Ramos, U.S.D.J. denied the parties' request for approval of a settlement with prejudice, advising the parties that they may "…stipulate to dismissal of the case without prejudice, which the Court need not approve under current Second Circuit caselaw", citing *Cheeks*. (*See Canelas*, 14-CV-7748, Dkt. 139 at page 6).
>
> In view of the foregoing, Plaintiff requests the Court to enter the dismissal without prejudice. If the Court is unwilling to do so, the parties will submit the settlement, once finalized, to the Court for approval.

(DE 27). The inherent contradiction between Plaintiff's position as stated in his letter to the Court and his arguments in opposition to Defendants' motion illustrates his transparent attempt to capitalize on *Cheeks* to avoid being bound by the settlement agreement to which he voluntarily agreed.[7]

---

[7] Plaintiff's accusation that Defendants "altogether ignore" the fact that the parties' settlement is subject to the *Cheeks* requirements (Pl. Opp. Br. at pp. 11) is nothing more than a hypocritical *ad hominem* attack. Upon Plaintiff's acceptance of Defendants' offer to settle for $10,000 in exchange for a general release, *Plaintiff*, and not Defendants, sought to evade the *Cheeks* approval process and proposed a voluntary dismissal followed by a private settlement. (Kosovych Reply Dec. Ex. 1). As Plaintiff points out in his opposition brief, Defendants understandably expressed discomfort with this proposition. (Pl. Opp. Br. at p. 5).

12

Firm:53779816

Again, the case law upon which Plaintiff relies is distinguishable. In *Mora v. Bareburger Group, LLC*, 2020 WL 5369051 (E.D.N.Y. Nov. 5, 2020), the parties attended a private mediation where they reached a settlement in principle and memorialized the terms in a term sheet. Although the parties informed the Court of the settlement and reported that an agreement would be submitted for fairness review pursuant to *Cheeks*, no settlement agreement was ever filed. *Mora*, 2020 WL 5369051, at *1. Litigation then resumed until the parties attended a second mediation almost two years later, which was unsuccessful. *Id.* at *2. The court rejected the plaintiffs' attempt to enforce the term sheet that had been reached at the first mediation (two years' prior) because the term sheet had never been submitted to the court for a fairness review. *Id.* at *3.

The circumstances in *Mora* are very different from those here, and Plaintiff's veiled suggestion that Defendants by their motion attempt to obtain Court endorsement of the settlement without undergoing the necessary *Cheeks* review is flat out false. After the Court rejected Plaintiff's Notice of Voluntary Dismissal, the parties worked to finalize a written settlement agreement memorializing the terms of their agreement in order to submit it to the Court in accordance with *Cheeks*. *See* Kosovych Reply Dec. Exs. 2, 3. By

---

Nevertheless, Defendants acquiesced with certain conditions and Plaintiff filed his Notice of Voluntary Dismissal. (DE 24).

13

contrast, the plaintiffs in *Mora* intended only to submit the term sheet to the Court for *in camera* review, in direct contravention of *Cheeks*. *Mora*, 2020 WL 5369051, at *1 n.4.[8]

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court enter an Order granting their Motion to Enforce Settlement in its entirety to enable the parties to submit their settlement agreement to the Court for its review pursuant to *Cheeks*.

Dated:  August 31, 2021

                    EPSTEIN BECKER & GREEN, P.C.

By:      /s/ *Adriana S. Kosovych*
    Jeffrey H. Ruzal
    Adriana S. Kosovych
    875 Third Avenue
    New York, New York 10022
    Tel: (212) 351-4500
    Fax:(212) 878-8600
    JRuzal@ebglaw.com
    AKosovych@ebglaw.com

    *Attorneys for Defendants FedCap Rehabilitation Services, Inc. and Wildcat Service Corporation*

---

[8] The other cases Plaintiff cites also are distinguishable. *See, e.g.*, *Junjiang Ji v. Jling Inc.*, 2019 WL 1441130 (E.D.N.Y. Mar. 31, 2019) (denying enforcement of settlement terms discussed mid-trial in open court in part because there was no written confirmation of the material terms of the parties' settlement agreement, e-mail or otherwise); *Yunjian Lin v. Grand Sichuan 74 St Inc.*, 2016 WL 5497837 (S.D.N.Y. June 23, 2016) (enforcement of alleged stipulated settlement agreement reached more than six months prior was not warranted because the defendants conceded no stipulated settlement agreement was ever presented to the court or Department of Labor for approval).  Here, there is a subscribed writing confirming the parties' agreement and the parties were poised to submit the agreement to the Court for *Cheeks* approval.

Firm:53779816