**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

HAROLD KING,
*on behalf of himself, FLSA Collective Plaintiffs*
*and the Class,*

                         Plaintiff,

             v.

FEDCAP REHABILITATION SERVICES, INC.,
and WILDCAT SERVICE CORPORATION,

                         Defendants.

---

**Case No.:** 20-cv-01784

<br>

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION**

<br>

Lee Litigation Group, PLLC
C. K. Lee, Esq. (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel: (212) 465-1188
Fax: (212) 465-1181

*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs*
*and the Class*

**TABLE OF CONTENTS**

EXHIBITS ............................................................................................................ iii

TABLE OF AUTHORITIES ................................................................................. iv

I.      PRELIMINARY STATEMENT ................................................................1

II.     SINGLE ENTERPRISE ANALYSIS .......................................................2

        A.      Related Activities .......................................................................... 3

        B.      Common Control ............................................................................ 4

        C.      Common Business Purpose ............................................................ 5

III.    PLAINTIFF KING'S FLSA COLLECTIVE ACTION CLAIMS .............5

IV.     PLAINTIFF IS SIMILARLY SITUATED AS COVERED EMPLOYEES ......................8

V.      ARGUMENT .............................................................................................14

        A.      THE COURT SHOULD CERTIFY THE COLLECTIVE ACTION AND ORDER NOTICE.............................................................. 14

                i.      The Standard for Conditional Certification and Notice Is Lenient ..............................................................................14

                ii.     The Underlying Merits of the Case are Immaterial to the Determination of Conditional Certification and Notice.........16

                iii.    Plaintiff Has Made the Modest Factual Showing Required for Conditional Certification..................................17

        B.      EARLY NOTICE TO SIMILARLY SITUATED EMPLOYEES IS APPROPRIATE AND NECESSARY................................................. 18

                i.      Sending Expedited Notice to Similarly Situated Employees Fulfills the FLSA's Broad Remedial Purposes...........................18

        C.      DISCOVERY OF NAMES, ADDRESSES AND TELEPHONE NUMBERS IS PROPER AND NECESSARY UNDER § 216(b) ............... 19

        D.      THE PROPOSED NOTICE IS FAIR AND ADEQUATE .................. 20

        E.      NOTICE SHOULD BE TRANSLATED TO SPANISH ..................... 21

        F.      EQUITABLE TOLLING ...................................................................... 21

VI.     CONCLUSION ..........................................................................................21

## EXHIBITS

**Exhibit A – Proposed Form of Collective Notice**

**Exhibit B – Fedcap Rehabilitation Services, Inc. Homepage Description of Wildcat Service Corporation Business**

**Exhibit C – Wildcat Service Corporation's Homepage Description of its Business**

**Exhibit D – Affidavit of Plaintiff Harold King**

**Exhibit E – Sample of Plaintiff King's Time Sheets**

**Exhibit F – Sample of Plaintiff King's Wage Statements**

**Exhibit G – Affidavit of 3rd Party Brickzaida Aponte**

**Exhibit H – Sample of Brickzaida Aponte Time Sheets**

**Exhibit I – Sample of Brickzaida Aponte Wage Statements**

**Exhibit J – Excerpts from Affidavit of David Saturn**

**Exhibit K – Excerpt from Defendants' Employee Handbook**

# TABLE OF AUTHORITIES

## CASES

*Anglada v. Linens 'N Things, Inc.*, No. 06 Civ. 12901, 2007 WL 1552511 (S.D.N.Y. Apr. 26, 2007) ...................................................................................................................... 14

*Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504 (S.D.N.Y. 1998)................................... 3, 4

*Braunstein v E. Photographic Labs.*, 600 F.2d 335 (2d Cir. 1978) ............................................. 18

*Brennan v. Arnheim & Neely*, 410 U.S. 512 (1973) ....................................................................... 3

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945) .................................................................... 22

*Cabrera v. Stephens*, 2017 U.S. Dist. LEXIS 160044, 2017 WL 4326511 (E.D.N.Y. 2017)...... 21

*Chao v. Gotham Registry, Inc.*, 514 F.3d 280 (2d Cir. 2008)................................................. 21, 22

*Cook v. United States*, 109 F.R.D. 81 (E.D.N.Y. 1985) ............................................................... 18

*Cuzco v. Orion Builders, Inc.*, 477, F. Supp. 2d 628 (S.D.N.Y. 2007)..................... 14, 15, 19, 21

*D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946)........................................................................ 22

*Dumitrescu v. Mr. Chow Enters., Ltd.*, No. 07 Civ. 3601, 2008 U.S. Dist. LEXIS 49881 (S.D.N.Y. June 30, 2008)......................................................................................................... 16

*Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317 (S.D.N.Y. 2007)...................... passim

*Foster v. Food Emporium*, No. 99 Civ, 3860, 2000 U.S. Dist. LEXIS 6053 (S.D.N.Y. Apr. 26, 2000) ...................................................................................................................................... 18

*Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 91 (S.D.N.Y. 2003) ........ 16, 19, 20

*Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340 (E.D.N.Y. 2012) ..................... 9

*Hallissey v. Amer. Online, Inc.*, No. 99 Civ. 3785, 2008 U.S. Dist. LEXIS 18387 (S.D.N.Y. Feb. 19, 2008) ................................................................................................................................. 15

*Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651 (S.D.N.Y. 2013) .................................................. 9

*Harhash v. Infinity West Shoes, Inc.*, No. 10 Civ. 8285, 2011 U.S. Dist. LEXIS 96880 (S.D.N.Y. Aug. 24, 2011) ........................................................................................................................ 9

*Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249 (S.D.N.Y. 1997)......................................... 16, 17, 19

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989)......................................................... 18

*Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363 (S.D.N.Y. 2007)......................... 15, 19

*Iriarte v. Redwood Deli & Catering, Inc.*, No. 07 Civ. 5062, 2008 WL 2622929 (E.D.N.Y. June 30, 2008) ................................................................................................................................. 13

*Jian Wu v. Sushi Nomado of Manhattan, Inc.*, 2019 U.S. Dist. LEXIS 127895 (S.D.N.Y. July 25, 2019) ...................................................................................................................................... 21

*Juarez v. 449 Restaurant, Inc.*, No. 13 Civ. 6977, 2014 WL 3361765 (S.D.N.Y. July 2, 2014) ... 5

*Khalil v. Original Homestead Rest., Inc.*, No. 07 Civ. 695, 2007 U.S. Dist. LEXIS 70372 (S.D.N.Y. Aug. 9, 2007) ..................................................................................................... 13

*Khamsiri v. George. & Frank's Japanese Noodle Rest. Inc.*, No. 12 Civ. 265, 2012 WL 1981507 (S.D.N.Y. June 1, 2012) ................................................................................................... 13

*Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346 (E.D.N.Y. 2008) ................................... 17

*Lee v. ABC Carpet Home*, 236 F.R.D. 193 (S.D.N.Y. 2006) ...................................................... 15

*Lixin Zhao v. Benihana, Inc.*, No. 01 Civ. 1297, 2001 U.S. Dist. LEXIS 10678 (S.D.N.Y. May 7, 2001) .................................................................................................................................. 13

*Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357 (S.D.N.Y. 2007) ................................. 17

*Machuca v. Villaggio Catering Corp.*, No. 14 Civ. 3508, Dkt. No. 43 (E.D.N.Y. Jan. 12, 2015) . 5

*Masson v. Ecolab, Inc.*, No. 04 Civ. 4488, 2005 U.S. Dist. LEXIS 18022 (S.D.N.Y. Aug. 17, 2005) .................................................................................................................................. 16

*Mazur v. Olek Lejbzon & Co.*, No. 05 Civ. 2194, 2005 WL 3240472 (S.D.N.Y. Nov. 29, 2005) 16

*Mentor v. Imperial Parking Sys.*, 246 F.R.D. 178 (S.D.N.Y. 2007) ................................. 14, 15, 17

*Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54 (E.D.N.Y. 2011) ................................................. 9

*Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572 (1942) .................................................... 22

*Patton v. Thomson Corp.*, 364 F. Supp. 2d 263 (E.D.N.Y. 2005) ............................................... 19

*Pefanis v. Westway Diner, Inc.*, No. 08 Civ. 0002, 2008 U.S. Dist. LEXIS 81082 (S.D.N.Y Oct. 8, 2008) ............................................................................................................................... 13

*Ramos v. DNC Food Serv. Corp.*, 2020 U.S. Dist. LEXIS 96123 (S.D.N.Y. June 1, 2020) ........ 21

*Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303 (S.D.N.Y. 1998) ................................................. 16

*Sanchez v. Gansevoort Mgmt. Grp., Inc.*, No. 12 Civ. 75, 2013 U.S. Dist. LEXIS 9739 (S.D.N.Y. Jan. 10, 2013) ..................................................................................................................... 9

*Sherrill v. Sutherland Global Servs.*, 487 F. Supp. 2d 344 (W.D.N.Y. 2007) ............................. 19

*Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056 (S.D.N.Y. Sept. 28. 2007) ........................................................................................................ 15, 17, 19

*Winfield v. Citibank, N. Am.*, 843 F. Supp. 2d 397 (S.D.N.Y. 2012). ........................................... 9

*Young v. Cooper Cameron Corp.*, 229 F.R.D. 50 (S.D.N.Y. 2005) ............................................. 17

## STATUTES

29 C.F.R. § 770.221 ..................................................................................................................... 4

29 U.S.C. § 203(r) ....................................................................................................................... 3

29 U.S.C. § 206 ......................................................................................................................... 22

29 U.S.C. § 207 ......................................................................................................................... 22

29 U.S.C. § 216(b) ............................................................................................ passim

29 U.S.C. § 255 ...................................................................................................... 18

29 U.S.C. § 256 ...................................................................................................... 18

N.Y. Exec. Law § 296 .............................................................................................. 1

NYC HRL Admin. Code § 8-107 .............................................................................. 1

## RULES

**Fed. R. Civ. P. 23** .......................................................................................... 1, 16

## REGULATIONS

29 C.F.R. § 779.206(a) ............................................................................................ 3

# I.    PRELIMINARY STATEMENT

On February 28, 2020, Plaintiff HAROLD KING ("Plaintiff" or "Plaintiff King") filed a Class and Collective Action Complaint against FEDCAP REHABILITATION SERVICES, INC. ("Fedcap") and WILDCAT SERVICE CORPORATION ("Wildcat") (together, "Defendants") seeking unpaid wages under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") and damages under New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL"), and New York City Human Rights Law, Administrative Code of City of NY § 8-107 ("NYCHRL").

Plaintiff brought the FLSA claims on behalf of himself and all current and former non-exempt employees who were employed in Defendants' job placement programs on or after the date that is six years before the filing of the Complaint. By this motion, Plaintiff seeks the following:

> (1) Conditional certification of the FLSA claim as a representative collective action pursuant to 29 U.S.C. § 216(b)[1] on behalf of all current and former non-exempt employees of Defendants whose labor and services Defendants contracted out to clients and partner corporations through Defendants' staffing programs at any time between February 28, 2014 and [the date of collective certification] ("Covered Employees")[2];

---

[1] Plaintiff does not currently seek class certification of his state law claims under Fed. R. Civ. P. 23 ("Rule 23").

[2] A number of District Courts in this Circuit "have held that where a case involves both NYLL and FLSA claims, it promotes judicial economy to send notice of the lawsuit to all potential plaintiffs at the same time even though some individuals may only have timely NYLL claims." *Anjum v. J.C. Penney Co*., No. 13 Civ. 460, 2015 U.S. Dist. LEXIS 73820, at *32 (E.D.N.Y. June 5, 2015); *see also Schwerdtfeger v. Demarchelier Mgmt.*, No. 10 Civ. 7557, 2011 U.S. Dist. LEXIS 60338, at *20 (S.D.N.Y. June 6, 2011); *Salomon v. Adderley Indus.*, 847 F. Supp. 2d 561, 566 (S.D.N.Y. 2012) ("[I]t is in the interest of judicial economy to provide notice covering both the three-year FLSA claims and six-year New York Labor Law claims.");

(2)  Approval of the proposed FLSA notice of this action and the consent form, attached hereto as **Exhibit A**;

(3)  Approval of the consent forms of opt-in plaintiffs to be sent directly to Plaintiff's counsel;

(4)  Production in Excel format of names, Social Security numbers, titles, compensation rates, dates of employment, last known mailing addresses, email addresses and all known telephone numbers of all Covered Employees within ten (10) days of Court approval of conditional certification;

(5)  Posting of the notice, along with the consent forms, in each of Defendants' places of business where Covered Employees are employed; and

(6)  Equitable tolling of the FLSA statute of limitations until such time that Plaintiff is able to send notice to potential opt-in plaintiffs.

## II.    SINGLE ENTERPRISE ANALYSIS

Defendants operate a not-for-profit staffing company that provides job placement for New York City ex-offenders, delinquent youth, and public assistance recipients by contracting out their labor to third-party entities.  Defendants operate the Corporations as a single integrated enterprise within the meaning of the FLSA. The FLSA provides that the term, "[e]nterprise means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all activities whether performed in one or

---

*Cano v. Four M Food Corp.*, No. 08 Civ. 3005, 2009 U.S. Dist. LEXIS 7780, at *30 (E.D.N.Y. Feb. 3, 2009) ("[I]t seems logical, efficient, and manageable to compel defendants' production of these names only once, if possible."); *Walston v. Edward J. Young, Inc.*, 2016 U.S. Dist. LEXIS 22084, at *21 (E.D.N.Y. Feb. 22, 2016) (holding that a six-year notice period is "appropriate and in the interests of judicial economy . . . even if some recipients of the notice will have claims that are time-barred under the FLSA.").

more establishments ..." 29 U.S.C. § 203(r). The three elements to be satisfied are (1) related activities, (2) common control and (3) common business purpose. *See Brennan v. Arnheim & Neely*, 410 U.S. 512, 518 (1973); *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504 (S.D.N.Y. 1998) (Sotomayor, J.)).

### A.    <u>Related Activities</u>

"Related activities" are activities that are "the same or similar" or are "auxiliary or service activities." *Archie*, 997 F. Supp. at 525 (quoting 29 C.F.R. § 779.206(a)). Auxiliary and service activities include "all activities which are necessary to the operation and maintenance of the particular business, such as warehousing, bookkeeping, or advertising." *Id*. Business entities that provide "mutually supportive services to the substantial advantage of each entity" are operationally interdependent and may be treated as a single enterprise under the FLSA. *Id*.

Together, Defendants FEDCAP REHABILITATION SERVICES, INC. and WILDCAT SERVICE CORPORATION run a nonprofit staffing company in New York City. Defendants' website www.new.fedcap.org states that "Wildcat Service Corporation is a division of FEDCAP." Thus, Wildcat is not a legally distinct subsidiary. Attached hereto as **Exhibit B** is a screenshot of FEDCAP REHABILITATION SERVICES, INC.'s homepage description of WILDCAT SERVICE CORPORATION business, located at https://new.fedcap.org/programs--services/programs--services-for-adults/wildcat-service-corp. This page states, "In 2012 Fedcap combined with Wildcat Service Corp. renowned for pioneering work with New York City's ex-offenders, disconnected youth, public assistance recipients and unemployed individuals." Attached hereto as **Exhibit C** is a screenshot of WILDCAT SERVICE CORPORATION's homepage description of its business, located at https://wildcatnyc.org/get-to-know-us/.

3

### B.    <u>Common Control</u>

"Control" is the power to "direct, restrict, regulate, govern, or administer the performance" of the related activities, and "common control" exists "where the performance of the described activities are controlled by one person or by a number of persons, corporations, or other organizational units acting together." *Archie*, 997 F. Supp at 526 (quoting 29 C.F.R. § 770.221). Such control is demonstrated by the following facts:

a)  Defendants enrolled Plaintiff and Covered Employees in a staffing program managed by both Defendants.

b)  After offering Plaintiff and Covered Employees training with basic working skills (such as MS Office, cleaning, cooking, among others), Defendants proceed to contact their partnered corporations in order to find available entry-level job positions for Plaintiff and Covered Employees.

c)  Even though Plaintiff and Covered Employees were performing work for the benefit of third-party entities, they were at all times controlled and supervised by Defendants.  Defendants manage the payroll and are in charge of administering Plaintiff's and Covered Employees' wages and compensations.

d)  Plaintiff and Covered Employees received their paystubs and paychecks directly from Defendants.

Thus, Defendants are Plaintiff's and Covered Employees' employers. Based on the common ownership of Defendants' enterprises, and the collective management of their employees, Defendants satisfy this second prong of "common control."

### C.   **Common Business Purpose**

The common business purpose prong is satisfied because, as demonstrated above, Defendants collectively operate a staffing program. Thus, Defendants collectively (1) engage in related activities, (2) exercise common control, and (3) serve a common business purpose. Because Defendants operate their staffing operations jointly, conditional collective certification is appropriate for all Covered Employees, regardless of whether "Fedcap" or "Wildcat" was on their paychecks. *See Machuca v. Villaggio Catering Corp.*, No. 14 Civ. 3508, Dkt. No. 43 (E.D.N.Y. Jan. 12, 2015) (granting plaintiffs' motion for FLSA collective certification for different stores based on common ownership, logo, menu and website on which defendants advertise all locations); *Juarez v. 449 Restaurant, Inc.*, No. 13 Civ. 6977, 2014 WL 3361765, at *4-5 (S.D.N.Y. July 2, 2014) (inferring that unlawful pay policies implemented at one store extended to other locations because all stores were run as an "integrated enterprise" with common ownership and same menu, décor and website).

### III.   **PLAINTIFF KING'S FLSA COLLECTIVE ACTION CLAIMS**

In or around January 2014, Plaintiff King was hired by Defendants to perform work for third party companies under Defendants' staffing program. **Exhibit D**, Declaration of Harold King ("King Decl.") ¶¶ 1-2, 4. Throughout his employment, Plaintiff worked for Defendants with different titles and schedules but always as some kind of laborer. *Id*. Plaintiff was employed from in or about January 2014 to on or around May 2019. *Id*.

During his employment with Defendants, Plaintiff suffered significant wage and hour violations. *First*, Plaintiff was time shaved when he was required to stay working past his scheduled shift without being paid for the additional work. For example, Plaintiff explains in his Declaration that, when working at Governor's Island, Defendants would exploit the fact that the

ferry that allowed workers to leave the island did not usually leave immediately at the end of Plaintiff's (and other workers') scheduled shifts. Since workers would be waiting around for it anyway, Defendants would insist that employees continue working. Defendants did not require this excuse, however, as supervisors would always find some way to keep Plaintiff and his co-workers working long past the time the ferry would arrive and long past the end of their scheduled shifts. King Decl. § 5.

*Second*, Plaintiff and other workers would be forced to work through their lunch breaks without being paid for this time. Plaintiff and his coworkers did not clock out for lunch as one would at most businesses. Instead, Defendants would automatically deduct one hour each shift from the total hours indicated by the schedules. But instead of then giving their workers an hour for lunch, Defendants through their agents would direct Plaintiff and Covered Employees to work through those breaks, on the grounds that they would be let off early in compensation. This promise would fail to materialize, however. Toward the end of the day, Defendants would load workers up with tasks that they knew could not be completed by the end of the scheduled shift, let alone an hour before the end of the scheduled shift, as would have been required to compensate Plaintiff and Covered Employees for the lost lunch breaks. King Decl. § 6.

*Third*, Plaintiff and other workers were sometimes required to travel to other locations, such as homeless shelters, for a second, evening shift. However, they were not paid for the time they spent traveling between work locations. King Decl. § 4.

Attached as **Exhibit E** is a small sampling of the time sheets Plaintiff was required to sign when working for Defendants. It is striking that, in every case, the "Out" time is exactly 3:00 p.m., not only for Plaintiff but also for the other workers whose hours have been recorded on the same sheets. This is highly artificial. In any work setting, there will be many occasions when employees

are unable to simply set their work aside at the precise instant their shift was scheduled to end. The suspicious uniformity indicates that, just as Plaintiff has alleged, Defendants would not pay him or other Covered Employees for any work done outside their scheduled shifts.

Even if Plaintiff and Covered Employees had been working for only a few minutes past the end of their scheduled shifts—and Plaintiff alleges that it was much more—Defendants would not be justified in just rounding those minutes down to the nearest whole hour if the overall effect of this practice was to reduce the amount Plaintiff and Covered Employees were being paid:

> It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes this practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.

29 C.F.R. § 785.48(b).

The fact that Plaintiffs' time sheets always end on whole hours does not suggest a neutral rounding policy. Neither do Plaintiffs' wage statements, some of which are attached as **Exhibit F**, as these also record Plaintiffs' time only in whole hours, indicating that the restrictions of 29 C.F.R. § 785.48(b) are being ignored.

**Exhibit E** also corroborates Plaintiffs' contention that he and other Covered Employees had no input into the content of their time sheets. On each daily time sheet, it is clear that the start and end times for each employee listed there are all in the same handwriting, betraying that it was a supervisor and not employees themselves who filled in the times. As Plaintiff explains in his Declaration, it was "take-it-or-leave-it. The start- and end-times were written out in advance and could not be adjusted to reflect the fact that Plaintiff and Covered employees had worked on past the end of their scheduled shifts. King Decl. § 7. Even if that time had been minimal—and Plaintiff

7

asserts that it was far more than minimal—the cumulative effect of Defendants' rounding down policies "result[ed], over a period of time, in failure to compensate the employees properly for all the time they have actually worked." 29 C.F.R. § 785.48(b).  It is also noteworthy that the time sheets contain no spaces in which to enter the actual times workers began and ended their lunch breaks.  We have only Defendants' say-so that they did not deduct any more time than workers actually took off for lunch.

### IV.        PLAINTIFF IS SIMILARLY SITUATED AS COVERED EMPLOYEES

Plaintiff has submitted ample evidence that the violations described above extended to all Covered Employees and not just him.  Plaintiff has submitted the names of three (3) of his former co-workers who suffered the same violations, which, as Plaintiff observes, were a constant topic of conversation within his work crew, who suffered from the same FLSA violations. King Decl. §§ 10-11. As discussed above, the time sheets produced here as **Exhibit E** show the same suspicious artificiality with respect to other workers. While these workers' names have been redacted, they too are represented as having always finished their shifts exactly on the hour as scheduled, even though this is most unrealistic and unlikely in the real world. They, too, have had their start and end times written in for them ahead of time.  They, too, were given no opportunity to register whether they actually took time off for lunch.

In addition, Plaintiff has submitted as **Exhibit G** the affidavit of third-party Brickzaida Aponte, another former employee of Defendants' who attests to having suffered identical violations. Ms. Aponte notes that she, too, was deducted for meal breaks that she could not actually take, was not compensated for travel time between job sites, and was time shaved through the consistent rounding down of her hours.  Affidavit of Brickzaida Aponte ("Aponte Aff.") §§ 8, 9, 12.  Like Plaintiff King, Ms. Aponte observes that these violations were suffered by other of

Defendants' employees as well, listing three (3) of her coworkers who can testify to this effect. Aponte Aff. §§ 10, 11. It bears emphasis that Ms. Aponte primarily worked at various homeless shelters and family residences, not Governor's island like Plaintiff King, so her experiences and those of her cohorts further confirm that Defendants' violations were committed as a matter of policy on a widespread basis, irrespective of the specific location or kind of work being performed. Aponte Aff. § 3.

Between them, Plaintiff King and Ms. Aponte have submitted the names of six (6) different co-workers who can speak to Defendants' uniform time-shaving policies, and courts in this Circuit regularly rely on hearsay evidence to determine the propriety of sending a collective action notice. *Sanchez v. Gansevoort Mgmt. Grp., Inc*., No. 12 Civ. 75, 2013 U.S. Dist. LEXIS 9739, at *1 (S.D.N.Y. Jan. 10, 2013); *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 644 (S.D.N.Y. 2013) (citing *Moore v. Eagle Sanitation Inc.*, 276 F.R.D. 54, 59 (E.D.N.Y. 2011)). "Such approach is consistent with the purpose of conditional certification which is only a preliminary determination as to whether there is a sufficient showing to warrant notice being sent to the purported collective class." *Winfield v. Citibank, N. Am.*, 843 F. Supp. 2d 397, 402-403 (S.D.N.Y. 2012). *See also Harhash v. Infinity West Shoes, Inc.*, No. 10 Civ. 8285, 2011 U.S. Dist. LEXIS 96880, at *3-4 (S.D.N.Y. Aug. 24, 2011) (granting conditional class certification in part based on plaintiffs' statements that they had spoken with or knew of other sales employees of defendants' shoe stores that complained of the same compensation policies); *Guzelgurgenli v. Prime Time Specials Inc*., 883 F. Supp. 2d 340, 352 (E.D.N.Y. 2012) (relying on the plaintiffs' allegations that three other delivery drivers for defendants' stores, who were identified only by first name, complained that they too were not paid for overtime hours).

Of course, Plaintiff has proffered evidence that goes well beyond hearsay or his own testimony, as shown by the time sheets and wage statements discussed above.  Moreover, Ms. Aponte's time sheets and wage statements paint the same picture as Plaintiff's.  Her time sheets, submitted as **Exhibit H**, are marked by the same suspicious features present in Plaintiff's time sheets (and those of his cohorts). Ms. Aponte's workday is also shown to end exactly on the hour for day after day without exception. As with Plaintiff's time sheets, the handwriting makes it clear that Ms. Aponte's hours, like those of the other employees listed on those timesheets, were written in by supervisors, not workers themselves. There is also no space to write in how much time, if any, was actually taken for a lunch break. On both Plaintiff's and Ms. Aponte's time sheets, the diagonal areas where start and end time are recorded are quite small, making it a challenge to record anything beyond whole numbers. The fact that Defendants did not think to prevent this problem by providing larger fill-in areas betrays that they attached no importance to a precise accounting of employees start and end times.

Defendants' unlawful time shaving is also corroborated by a sampling of Ms. Aponte's wage statements, attached as **Exhibit I**, where the hours on those paystubs always end in ".00" or ".50." Not a single one of the eighteen (18) wage statements reproduced there contains time entries ending in quarter hours (and nearly all of these statements have multiple time entries, given that Ms. Aponte was paid different rates at different locations). It is exceedingly unlikely that a neutral, rounding-to-the-nearest-quarter-hour policy permitted under 29 C.F.R. § 785.48(b) would have yielded this outcome. This set of wage statement was filed by Defendants in the context of another case, not cherry-picked by Plaintiff.

Defendants' filing in that case, *Aponte v. Fedcap Rehabilitation Services, Inc. et al.* (152683/2021), brought in New York County Supreme Court, also substantiates Plaintiff's

allegation that he and other Covered Employees were not compensated for travel time between different job sites to which Defendants would sometimes send them for a second shift.  Attached as **Exhibit J** are the relevant portions of the Affidavit of David Saturn ("Saturn Aff."). Mr. Saturn is the Senior Director of Wildcat Service Corporation, and he states, "Having reviewed both [Ms. Aponte's] time sheets and wage statements, there does not appear to be any discrepancy. Rather, she was compensated for all hours recorded on her time sheets." Saturn Aff ¶ 36. Mr. Saturn attempts to illustrate this contention by showing that Ms. Aponte was paid for travel times between job sites on July 30, 2018, August 14, 2018, and August 15, 2018. Saturn Aff. ¶ 29(a)-(c). However, the time sheets Defendants actually submitted in that case, some of which have been reproduced here as **Exhibit H**, tell a different story.

Ms. Aponte's timesheets for July 30, 2018, show that Plaintiff worked (1) a standard 8-hour shift from 8 a.m. to 4 p.m., for which she was credited 7.5 hours, and then (2) a 2.5-hour evening shift for which she was credited 2.5 hours. This makes for a total of 10 hours, not the 11.5 hours asserted by Mr. Saturn. Saturn Aff. ¶ 29(a). While Mr. Saturn attributes the 1.5 hours spent traveling between the day shift at the Armory shelter and evening shift at the PATH shelter to the latter, the time sheets do not in fact attribute this time to *either shift*.

Mr. Saturn also claimed that Ms. Aponte was paid in full for her work on August 14, 2018. But Ms. Aponte's time sheets show that she worked (1) a standard 8:00 am to 4:00 pm shift in the morning, for which she was credited 7.5 hours, and then (2) a 5:00 pm to 8:00 pm shift in the evening, for which she was credited 3 hours.  This makes for 10.5 hours, not the 11.5 hours claimed by Mr. Saturn. Saturn Aff. ¶ 29(b). As on July 30, the travel time between the worksites is not attributed to either shift and is nowhere acknowledged as compensable work on the time sheets. Likewise with August 15, 2018. Ms. Aponte's time sheets show that, on that day, she worked (1)

a standard 8:00 am to 4:00 pm shift in morning, for which she was credited 7.5 hours, and then (2) a 5:30 pm to 12:00 am shift in the evening, for which she was credited 6 hours.  This makes for 13.5 hours, not the 15 hours claimed by Mr. Saturn. Saturn Aff. ¶ 29(c). The 1.5 hours spent traveling between the worksites is, once again, not attributed to either shift.

This is hardly surprising, given Defendants' business model.  Defendants send Covered Employers to perform labor for the benefit of various partner entities, and, naturally, these entities have no interest in compensating the time that Covered Employees require to travel between them, since employers in this country normally do not pay employees just for the time it takes to get to work. And yet this does not alter Defendants' legal obligations as the employer of record that directed Covered Employees to travel between one worksite and the next.

Ms. Aponte has no connection with Plaintiff and worked at different job sites, and yet both her testimony and the documents Defendant filed in an attempt to refute that testimony reveal that Defendants' time-shaving practices are systemic. While these practices have been, for the most part, unacknowledged and informal, another of Defendants' filings show that they can sometimes be explicit. Attached as **Exhibit K** are the relevant portions of an employee handbook Defendants submitted in Ms. Aponte's case.  The handbook states: "If you are not at your work site prepared to work at the beginning of your scheduled work time, you are considered to be late. Employees who are late will be docked increments of 15 minutes." By this logic, an employee who arrives 6 minutes late for an 8-hour shift will be paid for 7.75 rather than 8 hours even though he actually worked 7.9 hours. That is hardly a neutral rounding policy. Given Defendants' practices, it is unsurprising that the handbook also advises workers to "arrive at your job site at least 15 minutes prior to the start of your scheduled start time"—since the penalty for being 1 minute late is 14 minutes of time-shaving.

Plaintiff's Declaration alone would have sufficed to justify conditional certification of an FLSA collective at this stage of the litigation, as it is more than sufficient to make a modest factual showing to support conditional certification. Affidavits by themselves should be sufficient because the Court at this point is not concerned with the reliability of such affidavits, only with whether they allege a common policy of violations. Courts in the Second Circuit have regularly granted conditional certification based on only one affidavit. *See, e.g., Khalil v. Original Homestead Rest., Inc.*, No. 07 Civ. 695, 2007 U.S. Dist. LEXIS 70372, at *3 (S.D.N.Y. Aug. 9, 2007) (certifying collective action based upon complaint and one affidavit); *Lixin Zhao v. Benihana, Inc*., No. 01 Civ. 1297, 2001 U.S. Dist. LEXIS 10678, at *2 (S.D.N.Y. May 7, 2001) (certifying based upon one affidavit founded on plaintiff's "best knowledge"); *Khamsiri v. George. & Frank's Japanese Noodle Rest. Inc*., No. 12 Civ. 265, 2012 WL 1981507 (S.D.N.Y. June 1, 2012) (granting conditional collective certification based on a single affidavit); *Iriarte v. Redwood Deli & Catering, Inc.*, No. 07 Civ. 5062, 2008 WL 2622929 (E.D.N.Y. June 30, 2008) (conditional collective certification was granted based on only one plaintiff declaration); *Pefanis v. Westway Diner, Inc.*, No. 08 Civ. 0002, 2008 U.S. Dist. LEXIS 81082, at *3-4 (S.D.N.Y Oct. 8, 2008) (granting conditional collective certification in a case with single plaintiff and no opt-ins).

Of course, Plaintiff has offered up a great deal more than his Declaration, not only Ms. Aponte's Affidavit but also documents produced by Defendants themselves, as discussed above. These documents may not definitively prove the truth of Plaintiff's allegations. Defendants may, for example, insist that, as incredible as it sounds, all of its employees really do stop working exactly on the hour at the end of every scheduled shift day after day without exception. But a 216(b) motion does not call for any judgment on the merits. What matters is whether Plaintiff has

13

alleged a common policy of FLSA violations, and all the evidence suggests that Defendants'
policies are uniform and not restricted to Plaintiff alone.

**V.      ARGUMENT**

To protect putative collective action members' rights and interests, and to promote judicial
economy and effective case management, the Court should approve the distribution of notice to
all Covered Employees because the initial pleadings and preliminary evidence show that all
Covered Employees are similarly situated. Based on the Complaint, the two affidavits, and all the
documentary evidence here submitted, it is clear that Plaintiff and Covered Employees worked as
non-exempt employees, were similarly situated, and that Defendants failed to pay wages for all
hours worked due to illegal time shaving and rounding policies. Thus, they "together were victims
of a common policy or plan that violated the law." *Cuzco v. Orion Builders, Inc*., 477, F. Supp. 2d
628, 633 (S.D.N.Y. 2007) (internal quotation omitted).

**A.      THE  COURT  SHOULD  CERTIFY  THE  COLLECTIVE  ACTION  AND  ORDER NOTICE**

**i.      The Standard for Conditional Certification and Notice Is Lenient**

"Courts generally determine the appropriateness of class certification at two stages: first,
on the initial motion for conditional class certification, and second, after discovery." *Fasanelli v.
Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 321 (S.D.N.Y. 2007). At the first stage, "courts
utilize a lenient evidentiary standard in assessing whether the Plaintiff has presented sufficient
evidence to demonstrate that a prospective class of member plaintiffs is similarly situated to the
named Plaintiff." *Anglada v. Linens 'N Things, Inc.*, No. 06 Civ. 12901, 2007 WL 1552511, at *11
(S.D.N.Y. Apr. 26, 2007); *Mentor v. Imperial Parking Sys.*, 246 F.R.D. 178, 181 (S.D.N.Y. 2007).
Under this lenient standard, a court will certify a class as a collective action and order notice to

potential class members where "the plaintiff satisfies the minimal burden of showing that the similarly situated requirement is met" based on the pleadings and declarations. *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 367 (S.D.N.Y. 2007) (internal quotation omitted). Upon certification, "[p]otential class members are then notified and provided with the opportunity to opt in to the action." *Id.*

To prevail on a motion for conditional certification, plaintiffs need only make a "modest factual showing" that they "are similarly situated *with respect to their allegations that the law has been violated.*" *Hallissey v. Amer. Online, Inc.*, No. 99 Civ. 3785, 2008 U.S. Dist. LEXIS 18387, at *6 (S.D.N.Y. Feb. 19, 2008) (internal quotation omitted; emphasis in original). Plaintiff must demonstrate that there is a "factual nexus between the [named plaintiff's] situation and the situation of other current and former [employees]." *Toure v. Cent. Parking Sys. of N.Y.*, No. 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056, at *6 (S.D.N.Y. Sept. 28. 2007) (internal quotation omitted; alterations in original); *see also Mentor*, 246 F.R.D. at 181; *Fasanelli*, 516 F. Supp. 2d at 321. Plaintiffs meet their burden where putative collective members "together were victims of a common policy or plan that violated the law[.]" *Lee v. ABC Carpet Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006) (internal quotation omitted), such as when they are all "employees of the same [] enterprise and allege the same types of FLSA violations." *Fasanelli*, 516 F. Supp. 2d at 322; *see also Toure*, 2007 U.S. Dist., LEXIS 74056, at *6 (stating that a plaintiff need only make a "modest factual showing" of similarity to satisfy the "relatively lenient evidentiary standard"); *Cuzco*, 477 F. Supp. 241 at 632-33 (plaintiff satisfied "minimal burden" by making "modest factual showing"); *Iglesias-Mendoza*, 239 F.R.D. at 367-68 ("[Plaintiffs] can satisfy the 'similarly situated' requirement by making a modest factual showing . . . that they and potential plaintiffs together were victims of a common policy or plan that violated the law.") (quoting *Realite v. Ark Rests.*

15

*Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998)); *Mazur v. Olek Lejbzon & Co.*, No. 05 Civ. 2194,

2005 WL 3240472, at *5 (S.D.N.Y. Nov. 29, 2005) (plaintiffs face only a very limited burden);

*Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) ("The burden on plaintiffs is not

a stringent one, and the Court need only reach a preliminary determination that potential plaintiffs

are "similarly situated.").

Allegations in the pleadings and declarations are sufficient to make this modest factual

showing, and Plaintiff has produced much more than this. Unlike a Rule 23 class action, a § 216(b)

collective action requires no "showing of numerosity, typicality, commonality and

representativeness . . . as a pre-requisite to approval." *Mazur*, 2005 WL 3240472, at *4 (internal

quotation omitted); *see also Masson v. Ecolab, Inc.*, No. 04 Civ. 4488, 2005 U.S. Dist. LEXIS

18022, at *37 (S.D.N.Y. Aug. 17, 2005). The lenient standard for certification and notice under §

216(b) is justified because "[t]he ultimate determination regarding the merits of the case, and

whether the class is properly situated – which requires a more 'stringent' inquiry – is made later

in the litigation process, after more thorough discovery." *Gjurovich v. Emmanuel's Marketplace,

Inc.*, 282 F. Supp. 2d 91, 105 (S.D.N.Y. 2003); *see also Dumitrescu v. Mr. Chow Enters., Ltd.*, No.

07 Civ. 3601, 2008 U.S. Dist. LEXIS 49881, at *11 (S.D.N.Y. June 30, 2008) (noting that after

discovery a court "review[s] the collective action certification more rigorously"). Plaintiff in this

case has easily met the lenient standard for certification and notice.

   ii.   **The Underlying Merits of the Case are Immaterial to the Determination of
         Conditional Certification and Notice**

Although Plaintiff is confident that he will successfully establish that Defendants failed to

properly compensate hims and the Covered Employees under the FLSA, an evaluation of the

underlying merits is unnecessary and inappropriate at this time: "[T]he standard in this circuit is

clear; the merits of plaintiffs' claim are not at issue in a motion for conditional certification."

16

*Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 354 (E.D.N.Y. 2008); *see also, e.g.*, *Mentor*, 246 F.R.D. at 181 (stating that "the merits of a plaintiffs claims need not be evaluated and discovery need not be completed to approve and disseminate a § 216(b) notice"); *Fasanelli*, 516 F. Supp. 2d at 322 ("To the extent that Defendants['] opposition relies on a detailed factual dispute about whether the Defendants maintained an 'illega1 off-the-clock' policy, 'illegal tip retention' policy, or fail to pay the minimum wage, that inquiry is misplaced as those issues go to the merits of the case."); *Toure*, 2007 U.S. Dist. LEXIS 74056, at *6 (stating that at the conditional certification stage "the merits of a plaintiff's claims need not be evaluated"); *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) ("At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."); *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (finding that "[t]he focus . . . is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated'"); *Hoffmann*, 982 F. Supp. at 262 ("[T]he Court need not evaluate the merits of plaintiffs' claims in order to determine that, a definable group of 'similarly situated' plaintiffs can exist here."). Any merits-based argument "is an improper ground on which to base a denial of a motion to certify conditionally an FLSA collective action." *Anglada*, 2007 U.S. Dist. LEXIS 39105, at *20. Rather, the proper inquiry is merely "whether the putative class alleged by Plaintiff is similarly situated based on the pleadings and any affidavits," *Fasaneilli*, 516 F. Supp. 2d at 321.

### iii.   Plaintiff Has Made the Modest Factual Showing Required for Conditional Certification

Here, Plaintiff has made far more than a modest factual showing that he and Covered Employees are similarly situated, all the evidence accompanying this memorandum clearly shows that all Covered Employees were subject to the same unlawful compensation scheme. If proven,

Plaintiff's allegations establish that Defendants maintained illegal policies and practices that similarly affected all Covered Employees.

### B.   EARLY NOTICE TO SIMILARLY SITUATED EMPLOYEES IS APPROPRIATE AND NECESSARY

Collective actions are favored under the law because they benefit the judicial system by enabling the "efficient resolution in one proceeding of common issues of law and fact" and provide employees with the opportunity to "lower individual costs to vindicate rights by the pooling of resources." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Braunstein v E. Photographic Labs.*, 600 F.2d 335, 336 (2d Cir. 1978); *Fasanelli*, 516 F. Supp. 2d at 323. The alternative, a multitude of virtually identical individual suits, would burden courts unnecessarily and risk inconsistent judgments arising from the same events and brought under the same laws.

#### i.   Sending Expedited Notice to Similarly Situated Employees Fulfills the FLSA's Broad Remedial Purposes

Expedited notice is critical in FLSA actions. Unlike absent class members in a Rule 23 class action, potential class members in an FLSA collective action must affirmatively consent (or "opt-in") to be covered by the suit. 29 U.S.C. § 216(b). The statute of limitations continues to run on each individual's claim until he or she files a written consent form with the Court. 29 U.S.C. §§ 255, 256 (b). To ensure that the rights protected by the FLSA do not grow stale through lack of knowledge, the Supreme Court has held that courts have broad authority to facilitate early notice of the existence of the lawsuit to potential opt in plaintiffs. *Hoffmann-La Roche*, 493 U.S. at 170. Notice to putative class members should be given as soon as possible since, because of the statute of limitations, "potential plaintiffs may be eliminated as each day goes by." *Foster v. Food Emporium*, No. 99 Civ, 3860, 2000 U.S. Dist. LEXIS 6053, at *5 (S.D.N.Y. Apr. 26, 2000); *see also Cook v. United States*, 109 F.R.D. 81, 83 (E.D.N.Y. 1985) ("Certainly, it is unlikely that

Congress, having created a procedure for representative action, would have wanted to prevent the class representative from notifying other members of the class that they had a champion.") (internal quotation marks and citation omitted). Thus, early distribution of a notice of pendency is crucial in an FLSA collective action.

The Court need not and should not delay the sending of notice until the completion of discovery. *Toure*, 2007 U.S. Dist. LEXIS 74056, at *8 (ordering notice under 29 U.S.C. § 216(b) where only limited discovery had taken place); *Iglesias-Mendoza*, 239 F.R.D. at 368 ("The court is not obliged to wait for the conclusion of discovery before it certifies the collective action and authorizes notice."); *Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 267-68 (E.D.N.Y. 2005) (ordering notice before full discovery in order to "facilitate[] the [FLSA]'s broad remedial purpose . . . promot[e] efficient case management . . . [and] preserve and effectuate the rights of potential plaintiffs whose claims might otherwise become time-barred during the discovery phase of the case") (internal citations omitted); *Hoffmann*, 982 F. Supp. at 262 (ruling that courts need not "wait for defendant to complete its discovery before authorizing class notice. To the contrary, courts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management"). In lieu of discovery, courts rely upon allegations in a complaint and employee declarations to determine whether plaintiffs and potential opt in collective members are similarly situated. *E.g.*, *Gjurovich*, 282 F. Supp. 2d at 104.

C. **DISCOVERY OF NAMES, ADDRESSES AND TELEPHONE NUMBERS IS PROPER AND NECESSARY UNDER § 216(b)**

It is appropriate for courts in collective actions to order the discovery of names and contact information of potential collective members. *E.g., Lee*, 236 F.R.D. at 202; *Fasanelli*, 516 F. Supp. 2d at 323-24; *Cuzco*, 477 F Supp. 2d at 637; *Sherrill v. Sutherland Global Servs.*, 487 F. Supp. 2d 344, 350 (W.D.N.Y. 2007); *Patton*, 364 F. Supp. 2d at 268. "Courts within this Circuit routinely

19

grant plaintiff's motion to compel production of the names and addresses of potentially similarly situated employees who may wish to 'opt-in' to a collective action." *Anglada*, 2007 U.S. Dist. LEXIS 39105, at *22.

Plaintiff therefore requests that, in addition to entering an order granting conditional certification and approving Plaintiff's proposed notice, the Court order Defendants to produce within ten days of its Order a list of all Covered Employees in Excel format who were employed by Defendants at any point in the six (6) years prior to the entry of the Order with the following information: names, titles, compensation rates, date of employment, last known mailing addresses, email addresses, and all known telephone numbers.

### D.   THE PROPOSED NOTICE IS FAIR AND ADEQUATE

Attached hereto as **Exhibit A** is Plaintiff's proposed judicial notice. The proposed notice provides clear instructions on how to opt-in and accurately states the prohibition against retaliation or discrimination for participation in an FLSA action. The Supreme Court specifically left the "content details of a proposed notice under § 216(b) . . . to the broad discretion of the court." *Lee*, 236 F.R.D. at 202; *see also Gjurovich*, 282 F. Supp. 2d at 106. "When exercising its broad discretion to craft appropriate notices in individual cases, District Courts consider the overarching policies of the collective suit provisions" and ensure that putative plaintiffs receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Fasanelli*, 516 F. Supp. 2d at 323. The proposed notice achieves the goal of providing potential opt-ins with accurate and timely notice concerning the pendency of the collective action and should be adopted.

### E.   NOTICE SHOULD BE TRANSLATED TO SPANISH

Given that many of the prospective plaintiffs in this case will be native Spanish speakers, Plaintiff believes that the goals of notice would be best served if the final approved notice that is provided to prospective class members also includes a Spanish language version. Sending notices in multiple languages has been approved in other cases in the Second Circuit. *See Cuzco*, 477 F. Supp. 2d at 634.

### F.   EQUITABLE TOLLING

In ruling on the instant motion, Plaintiff respectfully requests that the applicable FLSA statute of limitations not be tolled until such time that Plaintiff is able to send notice to potential opt-in plaintiffs. District Courts in this and other Circuits have increasingly granted a plaintiff's request for equitable tolling to avoid the prejudice to actual or potential opt-in plaintiffs that can arise from the unique procedural posture of these types of cases. *See, e.g*., *Ramos v. DNC Food Serv. Corp.*, 2020 U.S. Dist. LEXIS 96123, *29 (S.D.N.Y. June 1, 2020)  (finding that "[b]ecause [the certification] motion has been pending for several months . . . equitable tolling through at least until the date of this Opinion & Order is appropriate, and may be appropriate through the date of issuance of the Notice"); *Cabrera v. Stephens*, 2017 U.S. Dist. LEXIS 160044, 2017 WL 4326511, at *7 (E.D.N.Y. 2017) (holding that equitable tolling was appropriate to account for the time period needed for the court to issue a ruling on the conditional certification motion); *Jian Wu v. Sushi Nomado of Manhattan, Inc.*, 2019 U.S. Dist. LEXIS 127895 (S.D.N.Y. July 25, 2019) (collecting cases).

### VI.   CONCLUSION

The FLSA is a "uniquely protective," "remedial" and "humanitarian" statute. *See Chao v. Gotham Registry, Inc*., 514 F.3d 280, 285 (2d Cir. 2008). An express policy of the FLSA is "to

correct and as rapidly as practicable to eliminate" certain "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers." 29 U.S.C. § 202. The FLSA accordingly establishes a minimum wage, 29 U.S.C. § 206(a), "to secure for the lowest paid segment of the nation's workers a subsistence wage," *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 116 (1946). The FLSA also requires the payment of overtime compensation, 29 U.S.C. § 207, "to remedy the 'evil of overwork' by ensuring workers were adequately compensated for long hours, as well as by applying financial pressure on employers to reduce overtime," *Chao*, 514 F.3d at 285 (quoting *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 576-78 (1942)). When an employer fails to comply with its obligations, the Act requires the employer to provide the statutorily mandated compensation "to insure restoration [of its employees] . . . to [the] minimum standard of well-being" contemplated by the Act. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707(1945). As such, in order to further the legislative intent, class certification in this case must be granted, particularly to protect the rights of immigrant workers who may fear retribution for asserting their rights in this current anti-immigration climate.

22

Dated: New York, New York                    Respectfully submitted,

      October 8, 2021

                      By:    */s/ C.K. Lee*
                                C.K. Lee, Esq.

                                Lee Litigation Group, PLLC
                                C.K. Lee (CL 4086)
                                Anne Seelig (AS 3976)
                                148 West 24th Street, 8th Floor
                                New York, NY 10011
                                Tel: (212) 465-1188
                                Fax: (212) 465-1181
                                *Attorneys for Plaintiff,*
                                *FLSA Collective Plaintiffs and the Class*