# Exhibit J

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| BRICKZAIDA APONTE,<br>*on behalf of herself and the Class*,<br><br>Plaintiff,<br><br>- against -<br><br>FEDCAP REHABILITATION SERVICES, INC., and WILDCAT SERVICE CORPORATION,<br><br>Defendants. | Index No. 152683/2021<br><br>Hon. Shawn Timothy Kelly, J.S.C. |

### AFFIDAVIT OF DAVID SATURN IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION PURSUANT TO CPLR §§ 901 & 902

State of New York        )
                         ) ss:
County of New York       )

David Saturn, being duly sworn, deposes and says:

1.      I am over the age of 18 and am a resident of the State of New York. I have personal knowledge of the facts set forth in this Affidavit.

2.      I am currently the Senior Director of Wildcat Service Corporation ("Wildcat"). I have been in this role for approximately 11 years. In this capacity, I oversee and manage various social enterprise contracts, including one between Wildcat and the

Firm:53367750v3

27. However, based on need, some transitional workers occasionally worked overtime; most, however, never worked overtime. As stated in the Handbook, transitional workers who worked beyond 40 hours in a given work week were paid overtime: "Time worked over 40 hours per payroll week (Saturday – Friday) will be paid at the rate of one and one-half (1½) times the employee's regular hourly rate." *See* Exhibit 4, p. 14.

28. Few transitional workers worked multiple shifts in a single day. Most transitional workers never worked multiple shift in a single day. When transitional workers sporadically worked more than one shift in a single day, they almost always worked the second shift in the same shelters where they had worked the first shift. Thus, they did not have to travel between sites.

29. On those very rare occasions when crews worked a second shift at a different location from their first shift, they were compensated for travel time. For example, based on Ms. Aponte's time sheets and wage statements, she was compensated for travel time on the following occasions:

   a. On July 30, 2018, Ms. Aponte worked 7.5 hours at the Men's Armory Shelter from 8:00 am to 4:00 pm. She then travelled to the PATH shelter and worked 2.5 hours from 5:30 pm to 8:00 pm. She was paid for 7.5 hours for her shift at the Armory Shelter (she was not compensated for

her 30-minute meal break) and 4 hours for 2.5-hour shift at the PATH shelter. Thus, she received 1.5 hours of compensation for her time spent traveling between shelters.

b. On August 14, 2018, Ms. Aponte worked 7.5 hours at the Men's Armory Shelter form 8:00 am to 4:00 pm. She then travelled to the PATH shelter and worked 3 hours from 5:00 pm to 8:00 pm, according to her time sheets. She was paid 7.5 hours for her morning shift (she was not compensated for her 30-minute meal break) and 4 hours for her shift at the PATH shelter. Thus, she received 1.0 hour of compensation for her time spent travelling between shelters.

c. On August 15, 2018, Ms. Aponte worked 7.5 hours at the Men's Armory Shelter form 8:00 am to 4:00 pm. She then travelled to the PATH shelter and worked a 6-hour shift starting at 5:30 pm. She was paid 7.5 hours for her morning shift (she was not compensated for her 30-minute meal break) and 7.5 hours her evening shift. Thus, she received 1.5 hours of compensation for her time spent travelling between shelters.

30. When crews worked a second shift, they generally earned a shift differential. That's because either the first or second shift necessarily fell within a time

actually worked. Wildcat still has this policy. For example, attached hereto as Exhibit 8 are timesheets and wage records showing that a non-exempt employee signed in at 8:06 am on April 12, 2021, but was paid as if he signed in at 8:00 am. Therefore, he was overcompensated for that day.

35. It is my understanding that Ms. Aponte is claiming that she regularly worked "70 hours per week" and 102 "hours per week for every two weeks." This is not accurate, and Ms. Aponte's timesheets do not reflect this. On occasion, Ms. Aponte may have worked 70 or more hours over a two-week period, but never in a single week.

36. It is my further understanding that Ms. Aponte is claiming that she regularly worked various hours for which she was not compensated. Having reviewed both her time sheets and wage statements, there does not appear to be any discrepancy. Rather, she was compensated for all hours recorded on her time sheets.

37. During the relevant time, Fedcap and Wildcat together referred workers to 209 locations, only 11 of which were under the DHS contract applicable to Ms. Aponte's temporary employment.

38. Fedcap and Wildcat held various contracts with the federal, state, and local governments and with private businesses. The services provided under these contracts differed. For example, Fedcap and Wildcat had contracts with the federal government to

wage payments. As stated in the handbook that governed Mr. King's employment: "All employees should review their paystubs each payday and report any errors or inappropriate deductions to the payroll department so that the Agency may correct any error prior to the end of the next pay period." *See* Exhibit 9, p. 31.

48. It is my understanding that Mr. King is claiming that he was not paid for all time worked. Like Ms. Aponte, Mr. King was properly paid, including any overtime worked, based on the number of hours he recorded on his time sheets.

49. During my time at Wildcat, aside from Ms. Aponte and Mr. King, I have never learned of a complaint that a non-exempt worker was not fully compensated for all time worked that was not eventually resolved, and I would have learned of such a complaint on account of my position. More specifically, Wildcat has an internal procedure in place whereby payroll would contact me if there was a disagreement with a non-exempt employee regarding pay for all hours worked that could not be resolved.

_____
David Saturn

Sworn to before me this
6th day of July, 2021

_____
Notary Public

MATTHEW FRIEDMAN
Notary Public - State of New York
NO. 01FR6385018
Qualified in Kings County
My Commission Expires Dec 24, 2022

13

Firm:53367750v3