UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
                                                      :
HAROLD KING, on behalf of himself, FLSA  :
Collective Plaintiffs, and the Class,          :
                                                      :
                                  Plaintiff,       :                 20-CV-1784 (VSB)
                                                      :
                  - against -                      :            **OPINION & ORDER**
                                                      :
                                                      :
FEDCAP REHABILITATION SERVICES,  :
INC., and WILDCAT SERVICE          :
CORPORATION,                           :
                                                      :
                                  Defendants.  :
                                                      :
---------------------------------------------------------X

<u>Appearances</u>:

C.K. Lee
Rony Guldmann
Anne Melissa Seelig
Lee Litigation Group, PLLC
New York, New York
*Counsel for Plaintiff*

Adriana Stefanie Kosovych
Jeffrey Howard Ruzal
Epstein Becker & Green, P.C.
New York, New York
*Counsel for Defendants*

<u>VERNON S. BRODERICK, United States District Judge</u>:

        Plaintiff Harold King brings the instant action pursuant to the Fair Labor Standards Act

("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York Labor Law ("NYLL"), N.Y. Lab. Law § 650

*et seq.*, against Defendants FEDCAP REHABILITATION SERVICES, INC. ("Fedcap") and

WILDCAT SERVICE CORPORATION ("Wildcat") (together, "Defendants").  Before me is

Plaintiff's motion seeking an order:  (1) granting conditional certification of his FLSA claim as a

collective action pursuant to 29 U.S.C. § 216(b); (2) approving the proposed FLSA notice of this action and the consent form and ordering that those be mailed to potential opt-in plaintiffs and posted in Defendants' places of business; (3) directing Defendants to produce contact information for potential members of the collective; and (4) equitably tolling the statute of limitations period for potential members pending the expiration of the opt-in period.  Because I find Plaintiff has met his modest burden of demonstrating that non-managerial staff at Fedcap and Wildcat are similarly situated with respect to their overtime claim, Plaintiff's motion for conditional collective certification is GRANTED.

## I.   <u>Background</u>[1]

Defendants Fedcap and Wildcat are both nonprofit organizations focused on recruiting and job placement for individuals previously involved with the justice system, disconnected youth, and public assistance recipients.  (Am. Compl. ¶ 8.)[2]  Defendants are both domestic corporations organized under the laws of New York with a principal address at 633 Third Avenue, 6th Floor, New York, NY 10017.  (*Id.* ¶ 9.)

Plaintiff Harold King previously worked as an employee of Defendants.  (*Id.* ¶¶ 26–27.) Defendants hired Plaintiff in or around January 2014 to perform work for third-party companies under Defendants' job placement program.  (*Id.* ¶ 26.)  Plaintiff worked for Defendants with different titles and schedules, mostly as a laborer.  (*Id.* ¶ 27.)  Plaintiff worked as a maintenance worker.  (*Id.*)  Plaintiff was assigned to work at Governors Island, New York throughout his

---

[1] The facts in this section are recounted to provide background for this conditional certification decision, and are not intended to and should not be viewed as findings of fact.  They are based on the facts contained in Plaintiff's amended complaint as well as the memoranda of law, declarations, and incorporated exhibits filed by Plaintiff and Defendants.

[2] "Am. Compl." refers to Plaintiff's First Amended Class and Collective Action Complaint, filed June 8, 2020 ("Amended Complaint").  (Doc. 10.)

employment.  (King Decl. ¶ 4.)[3]  Plaintiff alleges that, even though he was performing tasks for different entities through Defendants' programs, "Plaintiff's payroll, timesheets, paystubs, and other work-related documents were directly under Defendants' supervision and control, and it was Defendants that established Plaintiff's wages, pay methods, and working time." [4]  (Am. Compl. ¶ 30.)

Plaintiff alleges that Defendants violated the FLSA by failing to pay him his overtime premiums.  (*See* Am. Compl.)  Plaintiff alleges Defendants forced him and other employees to stay and continue to work past scheduled shifts without payment for the additional work.  (*Id*. ¶ 31.)  Specifically, Plaintiff alleges that Defendants would round down time worked to the nearest hour for purposes of calculating compensation, often when he and others worked beyond the end of the shift.  (*Id*.)  Because Plaintiffs and other employees worked over forty hours per week, Defendants' rounding down resulted in unpaid overtime compensation.  (*Id*.)  Plaintiff further alleges that Defendants automatically deducted an hour from workers' wages for a meal break, resulting in one unpaid hour per day, even though Plaintiff and other employees did not take a lunch break.  (*Id.* ¶ 32.)  Because Plaintiff and his fellow employees worked over forty hours per week, Defendants' improper deduction for breaks resulted in unpaid overtime wages.  (*Id*.)  Lastly, Plaintiff alleges he and other employees were required to travel to other locations for additional work, but they were not compensated for their travel time.  (King Decl. ¶ 4.)

In support of his FLSA claim, Plaintiff alleges Defendants failed to maintain proper

---

[3] "King Decl." refers to the Declaration of Plaintiff Harold King submitted as Exhibit D to Plaintiff's motion.  (Doc. 77-4.)

[4] Plaintiff devotes a portion of his memorandum of law arguing that Defendants operate their corporations as a single enterprise within the meaning of the FLSA.  (Pl. Mem. 2–5.)  Defendants' enterprise model is not at issue at this stage of the litigation.  At this stage, I am focused on determining whether Plaintiff and potential opt-in plaintiffs "may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred."  *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010).  I will therefore not address this argument.

employment records, provided fraudulent wage statements that failed to accurately show the number of hours worked, and never provided Plaintiff or other workers with proper wage notices.  (Am. Compl. ¶¶ 34–35.)  Plaintiff alleges he and other employees regularly worked shifts exceeding ten hours but never received any spread of hours premium for working such shifts.  (*Id.* ¶ 33.)

## II.   **Procedural History**

Plaintiff filed his initial complaint against Defendants for violations of FLSA and NYLL on February 28, 2020. (Doc. 1.)  Plaintiff filed the Amended Complaint on June 8, 2020.[5]  (Doc. 10.)  On February 16, 2021, Plaintiff filed a notice of voluntary dismissal of Defendants pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).  (Doc. 24.)  On March 4, 2021, I ordered the parties to provide the terms of the settlement and a joint letter to ensure, in compliance with the FLSA, they were fair and reasonable.  (Doc. 28.)  On May 3, 2021, the parties indicated in separate letters that they were unable to agree to the settlement terms.  (Docs. 33–34.)  On May 13, 2021, I referred the case to Magistrate Judge Stewart Aaron for settlement purposes.  (Doc. 36.)

On July 22, 2021, Plaintiff filed a motion for conditional collective certification, (Doc. 42), and a supporting memorandum of law and supporting declaration, (Docs. 48–49.)  On July 27, 2021, Defendants filed a motion to enforce the settlement, (Doc. 47), and a supporting memorandum of law and declaration, (Docs. 48–49.)  Plaintiff filed an opposition to the motion to enforce the settlement, (Doc. 50), and Defendants filed their reply, (Doc. 59.)  On August 24, 2021, Plaintiff filed a motion for sanctions, (Doc. 51), and a supporting memorandum of law and

---

[5] Plaintiff also alleges violations of the New York State Human Rights Law and the New York City Human Rights Law for Defendants' race-based discrimination against him, (Am. Compl. ¶¶ 59–71), but these are not relevant to the resolution of this motion.

declaration, (Doc. 52–53.)  I held a status conference on September 16, 2021, at which I denied

Defendants' motion to enforce the settlement and Plaintiff's motion for sanctions.  (Doc. 65.)

The parties jointly requested that I deny as moot Plaintiff's initial motion for conditional

collective certification, (Doc. 42), so that Plaintiff could amend and refile the motion to include

more evidence, (Doc. 68.)  On September 23, 2021, I granted that request.  (Doc. 69.)  On

October 7, 2021, Defendants filed their answer to the Amended Complaint.  (Doc. 75.)

On October 8, 2021, Plaintiff filed this amended motion for conditional collective

certification, (Doc. 76), an amended memorandum of law with exhibits, (Pl. Mem.),[6] and a

supporting declaration, (Doc. 78.)  On November 12, 2021, Defendants filed their memorandum

of law in opposition, (Def. Mem.),[7] and supporting declaration, (Doc. 82.)  Plaintiff filed his

reply, (Pl. Reply),[8] and supporting declaration on December 1, 2021.  (Doc. 85.)

On January 13, 2022, I granted the parties' request to adjourn mediation in this case until

I issued a decision on the motion for conditional collective certification.  (Doc. 94.)

### III.   <u>Legal Standards</u>

Under the FLSA, employees may pursue collective actions to recover unpaid wages

where the employees are "similarly situated" and give consent to become a party in a writing

filed with the court.  *See* 29 U.S.C. § 216(b).  A district court may implement § 216(b) by

"facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to

opt-in as represented plaintiffs."  *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010)

---

[6] "Pl. Mem." refers to Plaintiff's memorandum of law in support of his motion for conditional collective certification filed on October 8, 2021.  (Doc. 77.)

[7] "Def. Mem." refers to Defendants' memorandum of law in opposition to Plaintiff's motion for conditional collective certification filed on November 12, 2021.  (Doc. 83.)

[8] "Pl. Reply" refers to Plaintiff's reply memorandum of law in support of his motion for conditional collective certification filed on December 1, 2021.  (Doc. 84.)

(internal quotation marks omitted).  The court may also direct a defendant employer to disclose

the names and addresses of potential class members.  *See Hoffmann-La Roche Inc. v. Sperling*,

493 U.S. 165, 169–70 (1989).

In the Second Circuit there is a two-step certification process for FLSA opt-in collective

actions.  *Myers*, 624 F.3d at 554–55.  At the first stage, the district court must make "an initial

determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the

named plaintiffs with respect to whether a FLSA violation has occurred."  *Id.* at 555.  In order to

achieve conditional certification, plaintiffs must make only a "'modest factual showing' that they

and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the

law.'"  *Id.* (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).  "The key

element of that showing is a shared unlawful policy; that is, while the proposed collective need

not be identical in every possible respect, its potential members must be similarly situated with

respect to the allegedly unlawful policy or practice."  *Korenblum v. Citigroup, Inc.*, 195 F. Supp.

3d 475, 479 (S.D.N.Y. 2016) (internal quotation marks omitted).  "Plaintiffs may satisfy this

requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and

declarations of other potential class members."  *Hallissey v. Am. Online, Inc.*, No. 99-CIV-3785

(KTD), 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008).  Although "[u]nsupported assertions"

are not sufficient to certify a collective action, the Second Circuit has emphasized that the

standard of proof at this initial stage should remain "low" because "the purpose of this . . . stage

is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist."  *Myers*, 624 F.3d

at 555 (citation omitted).  The court "does not resolve factual disputes, decide substantive issues

going to the ultimate merits, or make credibility determinations" at this stage.  *Bhumithanarn v.*

*22 Noodle Mkt. Corp.*, No. 14–cv–2625 (RJS), 2015 WL 4240985, at *3 (S.D.N.Y. July 13,

2015) (quoting *Lynch v. United Serv's. Auto. Ass'n*, 491 F.Supp.2d 357, 368 (S.D.N.Y. 2007)).

The court may, however, "evaluate the sufficiency of plaintiffs' pleadings." *See Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 556 (S.D.N.Y. 2013).  As Judge Paul A. Engelmayer observed in *Trinidad*,

> [t]he court's discretionary power to facilitate the sending of notice to potential class members is premised on its use as a tool for efficient case management, and it does not promote efficient case management to facilitate notice to potential class members where the representative plaintiffs have failed to state plausible FLSA violations. . . . [I]t makes little sense to certify a collective action based on manifestly deficient pleadings.

*Id.* (internal citations omitted); *see also Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F. Supp. 2d 101, 105 (S.D.N.Y. 2003) ("Once the Plaintiff makes a colorable claim for relief, the only inquiry necessary is whether the potential plaintiffs to be notified are similarly situated to the named plaintiff").

If the court finds that the plaintiffs have satisfied their burden, it may exercise its discretionary power to conditionally certify the collective action and facilitate notice to the potential class members. *See Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 475 (S.D.N.Y. 2010).

After completing discovery, a defendant may move to challenge certification, initiating the second stage of conditional certification. *See Myers*, 624 F.3d at 555.  At this stage, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs," and "[t]he action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Id.*; *see also Viriri v. White Plains Hospital Med. Ctr.*, 320 F.R.D. 344, 348 (S.D.N.Y. 2017) ("After discovery is completed, if it appears that some or all members of a conditionally certified class are not

similarly situated, a defendant may move to challenge certification, at which point a court will

conduct a more searching factual inquiry as to whether the class members are truly similarly

situated." (internal quotation marks omitted)).

IV.   **Discussion**

A.   *Conditional Certification*

Plaintiff moves for conditional certification of the collective consisting of "all current and

former non-exempt employees of Defendants whose labor and services Defendants contracted

out to clients and partner corporations through Defendants' staffing programs at any time" since

February 28, 2014 ("the collective" or "Covered Employees"). (Pl. Mem. 1.) Defendants argue

that the motion should be denied because Plaintiff has failed to show that he is similarly situated

to the collective. (Def. Mem. 9–14.) Specifically, Defendants assert that determination of each

putative collective member's claims requires significant individualized proof, and those claims

are subject to unique defenses that will require individualized determinations. (*Id*. at 14–15.)

After reviewing the Amended Complaint and Plaintiff's declaration and incorporated

exhibits, I find that Plaintiff has carried his "modest" burden with respect to certification of a

collective of non-management employees on their overtime claim. Specifically, I find that

Plaintiff has met his burden to show that Plaintiff and the collective are similarly situated and

experienced similar violations, including that Defendants allegedly rounded down employees'

hours and deducted compensation for work during meal breaks. However, I do not find that

Plaintiff has adequately demonstrated that he and the collective are similarly situated regarding

the allegation that Defendants did not compensate employees for time spent traveling during the

hours of their employment. This flaw is not fatal to my determination because Plaintiff has

sufficiently met his burden for the other overtime allegations.

The FLSA requires that, "for a workweek longer than forty hours," an employee working "in excess of" forty hours shall be compensated for those excess hours "at a rate not less than one and one-half times the regular rate at which [she or] he is employed."  29 U.S.C. § 207(a)(1). "[I]n order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 88 (2d Cir. 2013) (internal quotation marks omitted).

Plaintiff alleges in his Amended Complaint that Defendants routinely rounded down when calculating hours worked.  Plaintiff and the collective often worked over forty hours per week so Defendants' policy deprived them of compensation for their overtime.  To show that Plaintiff and the collective are similarly situated, Plaintiff submits (1) the names of three of Plaintiff's former coworkers who suffered the same violations, with whom Plaintiff regularly conversed about Defendants' compensation policies and resulting lost wages, (King Decl. ¶¶ 10–11); (2) timesheets showing Plaintiff's and other workers' hours, reflected only in whole numbers, (Pl. Mem. Ex. E); and (3) the declaration of Brickzaida Aponte, a former employee of Defendants who attests to having suffered the same violations, (Aponte Decl.),[9] as well as Ms. Aponte's wage statements and timesheets, (*id*. Exs. I–H.)

The Amended Complaint and Plaintiff's declaration and incorporated exhibits contain allegations supporting the notion that Plaintiff and a wide variety of employees of Defendants regularly worked over forty hours a week, but were not paid the overtime premiums to which they were entitled under the FLSA.  First, Plaintiff attests in his declaration that he and three of

---

[9] "Aponte Decl." refers to the Declaration of Brickzaida Aponte, which was submitted as Exhibit G to Plaintiff's motion.  (Doc. 77-7.)

his "fellow non-managerial coworkers," "Malik [LNU], Abu [LNU], and Abby [LNU]," who

worked as laborers, frequently discussed Defendants' policy of rounding down when employees

stayed at work past the end of their scheduled shift.  (King Decl. ¶¶ 11–12.)  Plaintiff describes

conversations in which they would

> complain to each other about how we were being shortchanged by Defendants' time
> shaving . . . Malik [LNU], Abu [LNU], and Abby [LNU] often complained to me
> about having to work past their scheduled shifts and through their lunch breaks and
> how this was not reflected in their paystubs, which was based on scheduled shifts
> minus an automatic deduction for fake meal breaks.

(*Id*. ¶ 11.)

Second, Plaintiff attaches timesheets reflecting the hours he and other employees worked

at Governors Island in May and June 2018.[10]  (Pl. Mem. Ex. E.)  Plaintiff asserts that these

timesheets show that time worked was only ever recorded in whole numbers, representing

Defendants' policy of rounding down when employees worked past the end of their shift.  (Pl.

Mem. 6–7.)  He represents that this "suspicious uniformity" indicates that Defendants did not

compensate the collective "for any work done outside their scheduled shifts."  (*Id*.)  Besides

when Plaintiff and other employees were listed as "out" or "sick", the "in" time on the

timesheets is exclusively listed as "7 AM" and the "out" time as "3 PM."  (Pl. Mem. Ex. E.; Pl.

Mem. 6.)

Third, Plaintiff attaches Ms. Aponte's declaration in which she attests that she

experienced the same violations.  Ms. Aponte worked as a maintenance worker and laborer

beginning in May 2018, and then was sent to work at third-party companies under Defendants'

job placement program until around January 6, 2019.  (Aponte Decl. ¶ 2.)  Ms. Aponte's primary

---

[10] Plaintiff King's name on the timesheets is visible, but other employees' names have been redacted.  (Pl. Mem. Ex.
E.)

work location was the Atlantic Armory Shelter in Brooklyn, New York, but she was occasionally

required to work at two other shelter locations in the Bronx and Brooklyn. (*Id.* ¶ 3.) Ms. Aponte

attests that Defendants had a policy of deducting thirty minutes for a break during every shift,

and she was often required to travel to other locations and not compensated for that time. (*Id.* ¶¶

8–9.) She also attests that Defendants improperly rounded down her hours, so she was not paid

for all hours worked. (*Id.* ¶ 12.) Ms. Aponte attests that she regularly spoke with three "fellow

non-managerial co-workers," "Pinky [LNU]," "April [LNU]," and "Maria [LNU]," all

maintenance workers, about how Defendants undercompensated them for their time worked, and

about Defendants' practices of rounding down and not compensating them for work during meal

breaks. (*Id.* ¶¶ 4, 10–11, 13, 15–16.) She attests that all employees were subject to the same

wage and hour policies, and that it was common knowledge that Defendants engaged in these

practices. (*Id.* ¶ 4.) Ms. Aponte states she worked with over fifty individuals during her time

working for Defendants, and that Defendants employ hundreds of people as manual laborers and

maintenance workers. (*Id.* ¶ 21.) Ms. Aponte's timesheets for at least parts of July and August

2018 are included as well, which also reflect the time "in" and "out" only as whole numbers.

(Pl. Mem. Ex. H.)

   Defendants argue that Plaintiff has failed to meet his burden to show he and the collective

are similarly situated or that Defendants had any uniform policies concerning off-the-clock work

and meal breaks that affect all non-exempt employees. (Def. Mem. 9.) Specifically, Defendants

challenge that Plaintiff has any personal knowledge of Defendants' policies at other workplaces

besides his own. (*Id.*) This is false. In support of Plaintiff's assertion that Defendants have a

policy of rounding down hours, Plaintiff submits evidence purporting that eight employees who

worked as both laborers and maintenance workers, including Plaintiff, were denied

compensation due to Defendants' alleged policy—three others at Governors Island, Plaintiff's

work location, and four at the Atlantic Armory Shelter, the Kingsborough Star Men's Shelter,

and the Catherine Street Family Respite Shelter.  (*See* King Decl. ¶¶ 4, 10–11; Aponte Decl. ¶¶

3–4, 10–11.)  Plaintiff attests to his personal experience with the alleged policy and

conversations with three other laborers who experienced the same violations from the alleged

policy.  (King Decl. ¶¶ 10–11.)  Plaintiff details his conversations with his coworkers:

> I frequently discussed Defendants' illegal rounding and time shaving policies with
> other employees, particularly Malik [LNU], Abu [LNU], and Abby [LNU], while
> we were working. We would complain to each other about how we were being
> shortchanged by Defendants' time shaving.  Malik [LNU], Abu [LNU], and Abby
> [LNU] often complained to me about having to work past their scheduled shifts and
> through their lunch breaks and how this was not reflected in their paystubs, which
> was based on scheduled shifts minus an automatic deduction for fake meal breaks.

(*Id*. ¶ 11.)  Based on his work experience and personal observations, Plaintiff knows "that all

employees of Defendants were subject to the same wage and hour policies."  (*Id*. ¶ 10.)

Plaintiff also attaches Ms. Aponte's declaration, which presents her personal experience

and conversations with three maintenance workers about their shared experiences with

Defendants' unlawful policies.  (Aponte Decl. ¶¶ 4, 10–11, 13, 15–16.)  Ms. Aponte conversed

with her coworkers about "Defendants' illegal time shaving policies" and "how the hours

reported on our pay stubs did not reflect the actual hours we worked."  (*Id*. ¶ 10.)  Her

coworkers, "Pinky [LNU], April [LNU], and Maria [LNU]," would complain "that they often

had to work past their scheduled shifts and confirmed that their pay stubs included only their

scheduled shifts and did not include all the hours that they were required to work."  (*Id*.)  They

complained "that Defendants took advantage of them by requiring them to work through their

meal breaks so that we could not enjoy free and clear meal breaks."  (*Id*.)  They complained to

Ms. Aponte that "their hours were also rounded down on a weekly basis and they complained

specifically that the paid hours always ended in .00 or .50 and was fewer hours than what they

actually worked." (*Id.* ¶ 13.) She attests that all their "paystubs showed rounding that showed that we were paid for rounded hours and failed to show and compensate us for all the hours we actually worked." (*Id.*)

Plaintiff and Ms. Aponte specifically describe their personal experiences with Defendants' unlawful policies as well as conversations with coworkers, specifying their locations and titles, about their shared experience of not receiving overtime payments.[11] Their personal experiences and their reiteration of their conversations about their coworkers' personal experiences, supported by timesheets evidencing the alleged violation, are sufficient. *See Garcia Ramos v. DNC Food Serv. Corp.,* 19-cv-2967 (VSB), 2020 WL 2832776, at *6 (S.D.N.Y. June 1, 2020) (granting conditional certification for overtime claim based on attestations of conversations with other specifically-identified employees about their own personal experiences with the alleged violations).

I am not persuaded by Defendants' argument that Plaintiff cannot show that Defendants employed this alleged policy against all workers at all their locations. (Defs. Mem. 11–12.) Plaintiff submits evidence of the alleged violations at four locations and against both laborers and maintenance workers. Plaintiff and Ms. Aponte attest that "[b]ased on [their] work experience and [] personal observations and conversations with co-workers, [they] know that all employees of Defendants were subject to the same wage and hour policies." (King Decl. ¶ 10, Aponte Decl. ¶ 4.) "In the Second Circuit, courts routinely find employees similarly situated

---

[11] Defendants mention in passing that Plaintiff lists only the first names of his coworkers in his declaration. (Def. Mem. 13.) This is not fatal to conditional certification because it does not affect the threshold question of whether the employees were subject to the same unlawful policy, especially when Plaintiff requests Defendants produce contact information for the collective. *See Rojas v. Kalesmeno Corp.*, No. 17 Civ. 0164 (JCF), 2017 WL 3085340, at *4 (S.D.N.Y. July 19, 2017) (finding last names not necessary for conditional certification, as "the fact that the plaintiffs do not have complete information for their co-workers is precisely why they are requesting that the defendants produce this data").

'despite not occupying the same positions or performing the same job functions and in the same locations, provided that they are subject to a common unlawful policy or practice.'" *Balverde v. Lunella Ristorante, Inc.*, No. 15 Civ. 5518 (ER), 2016 WL 2757430, at *4 (S.D.N.Y. May 11, 2016) (quoting *Guaman v. 5 M Corp.*, No. 13 Civ. 03820 (LGS), 2013 WL 5745905, at *4 (S.D.N.Y. Oct. 23, 2013)).   Based on the collective's purported shared experiences across different locations and positions, I find it reasonable to infer that the blanket policy extended across Defendants' places of employment.  *See, e.g., Garcia Ramos*, 2020 WL 2832776, at *6 (granting conditional certification based upon the reasoning that Plaintiff's conversations with other employees coupled with attestations from employees was sufficient to suggest that "a range of employees . . . in other words, every conceivable type of employee of [Defendant's business] . . . were subject to a blanket policy by Defendants of not paying overtime."); *Mendoza v. Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629(KPF), 2013 WL 5211839, at *3–5 (S.D.N.Y. Sept. 16, 2013) (granting conditional certification on overtime claim with respect to all employees of sushi restaurant based on affidavit of plaintiff, who was a food preparer and dishwasher and "aver[red] that his observations and conversations revealed other employees who" did not receive overtime pay); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 368 (S.D.N.Y. 2007) (granting conditional certification with respect to all employees of poultry farms based on affidavits of duck feeders and one butcher because "they were subjected to certain wage and hour practices at the defendants' workplace and to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed" collective).

Defendants also challenge Plaintiff's allegations about their policy of rounding down, arguing that a policy of rounding up or down is permissible under the FLSA.  (Def. Mem. 10.) At this stage, I do not assess the merits of the claims themselves, but only the evidence

purporting to show that Plaintiff and the collective "together were victims of a common policy or plan that violated the law" so as to deem they were similarly situated. *Myers*, 624 F.3d at 554; *see also Bhumithanarn*, 2015 WL 4240985, at *3 (the court "does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations" at this stage). Plaintiff must show "a shared unlawful policy." *Korenblum*, 195 F. Supp. 3d at 479 (internal quotation marks omitted). "[W]hile the proposed collective need not be identical in every possible respect, its potential members must be similarly situated with respect to the allegedly unlawful policy or practice." *Id*. (internal quotation marks omitted). "Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." *Hallissey*, 2008 WL 465112, at *1. Plaintiff's submissions are sufficient to show that Plaintiff and members of the collective were similarly situated with respect to the allegedly unlawful policy, as evidenced through the declarations and the timesheets. *Cf. Garcia Ramos*, 2020 WL 2832776, at *4–5 (certifying collective on overtime claim where Plaintiff's submissions alleged Defendants had a "corporate policy to not pay overtime," that policy was in place throughout their employment, and that it was "common knowledge that Defendants did not pay overtime." (internal quotation marks omitted)).

Nor would it be proper to conditionally certify a smaller subset of employees on this claim. "To justify including different categories of workers in an FLSA collective, a 'modest but *job-specific* factual showing' is required." *Jian Wu v. Sushi Nomado of Manhattan, Inc.*, 17cv04661 (PGG) (DF), 2019 WL 3759126, at *10 (S.D.N.Y. July 25, 2019 (quoting *Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 565 (S.D.N.Y. 2015)). Courts will also refuse to limit the collective when the Plaintiff points "to a greater variety of employees, [in different

work locations], that shared their experiences, and there is no suggestion that Defendants employed any other categories of employees." *Garcia Ramos*, 2020 WL 2832776, at *6.  Here, Plaintiff and Ms. Aponte's specifically spoke with both laborers and maintenance workers, but they also attest to conversations with and observations of others beyond those specific individuals about shared experiences with the unlawful policies.  (King Decl. ¶¶ 6–11; Aponte Decl. ¶¶ 4–19 (describing conversations with and observations of other employees' experiences with Defendants' policies besides the specifically-identified coworkers).)   Plaintiff and Ms. Aponte's attestations are rather conclusory with regard to these other employees, but, based on their declarations, "there is no suggestion that Defendants employed any other categories of employees." *Garcia Ramos*, 2020 WL 2832776, at *6.  I thus have reason to infer that many, if not all, prospective plaintiffs would be maintenance workers or laborers—titles which both Plaintiff and Ms. Aponte, as well as their coworkers, have possessed.  Specifically, Ms. Aponte attests that "Defendants are large companies with hundreds of employees in NYC who are Manual Laborers and Maintenance Workers like myself."  (Aponte Decl. ¶ 21.)  Thus, I decline to reduce the proposed collective at this stage.

Although it does not affect my decision to grant conditional certification, I find that Plaintiff has failed to submit sufficient evidence to show that he and the collective are similarly situated regarding the allegations that Defendants failed to compensate employees for time spent traveling to other sites.  First, Plaintiff never alleges this violation in his Amended Complaint.  (*See* Am. Compl.)  This alone could be fatal to such a claim.  It was not until Plaintiff submitted his supporting declaration to this motion that he alleged Defendants failed to pay him for his travel.  (King Decl. ¶ 4.)  Second, nowhere in Plaintiff's Amended Complaint does he state that he worked at more than one location or ever had to travel between work locations.  (*See* Am.

Compl.)  Indeed, Plaintiff's submissions demonstrate the contrary.  Plaintiff's timesheets only show that he worked at Governors Island, and his declaration only lists his place of work as Governors Island.  (King Decl. ¶ 4; Pl. Mem. Ex. E.)  Ms. Aponte's declaration makes clear that she and her coworkers traveled during their employment, and she also attests she was occasionally required to visit other shelters in Brooklyn and the Bronx apart from her normal workplace in Brooklyn, New York.  (Aponte Decl. ¶¶ 2–3.)  Without showing his own personal experience with the policy, Plaintiff cannot meet the "'modest factual showing' that [he] and potential opt-in plaintiffs 'together were victims'" of such a policy.  *Myers*, 624 F.3d at 554–55 (citation omitted).  Plaintiff's failure to meet his burden on this fact does not, however, defeat conditional certification for the overtime claims, because I still find the collective "similarly situated to the named plaintiff[] with respect to whether a FLSA violation has occurred" regarding Defendants' other policies of rounding down and denying compensation for work during meal breaks.  *Id.* at 555.  At the second stage of conditional certification, I may, "on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs," and "[t]he action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice."  *Id*.

Lastly, Defendants challenge conditional collective certification by arguing that determination of each collective member's claims would require significant individualized proof at trial and those claims are subject to unique defenses.  (Def. Mem. 14–16.)  I do not assess the merits at this stage of the litigation to make such a determination, *Bhumithanarn*, 2015 WL 4240985, at *3; however, my finding that Plaintiff and the collective are similarly situated with regard to the alleged unlawful policies of Defendants is sufficient at this stage to reject this

argument.

### B. *Notice and Consent Form*

At the conditional certification stage, the district court monitors both the drafting and the distribution of the notice to ensure timeliness and correctness, and courts have "broad discretion" over the details of the notice. *Gjurovich*, 282 F. Supp. 2d at 106; *see also Hoffmann-La Roche*, 493 U.S. at 170 (declining to examine the terms of a notice pursuant to § 216(b) based on the trial court's broad discretion).

Defendants oppose Plaintiff's proposed notice for several reasons, including (1) it is overly broad because Plaintiff has not shown that he is similarly situated to the "Covered Employees," as defined by Plaintiff; (2) any reference to NYLL claims must be stricken because Plaintiff has not moved for class certification of those claims; (3) the notice period is inappropriately long because it is based on the NYLL claims, which are not the subject of the motion; (4) the request to post the notice and consent forms in all Defendants' places of businesses is overreaching; (5) the consent forms should be sent directly to the Clerk of Court, rather than returned to Plaintiff's counsel; and (6) the notice excludes information identifying counsel for Defendants and their contact information. (Def. Mem. 16–19.) Essentially, Defendants' objections either relate to the content of the notice or the distribution of the notice.

### 1. Content of Notice

As mentioned *supra*, I have already found that Plaintiff and the collective are similarly situated. I am therefore not persuaded by Defendants' first argument that the notice is overly broad. (*See id.* at 16.)

Plaintiff requests, but Defendants do not address, that notice should be translated to Spanish since many prospective plaintiffs are native Spanish speakers. (Pl. Mem. 21.)

Similarly, Defendants request, but Plaintiffs do not address, that notice should include information identifying counsel for Defendants and their contact information.  (Def. Mem. 19.) Courts in this district have authorized notices in multiple languages, *see Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 634 (S.D.N.Y. 2007), so I do not find any issue in distributing the notice in both English and Spanish.  Likewise, courts in this district generally conclude the inclusion of information to identify counsel for Defendants and their contact information is appropriate in a notice, *see Slamna v. API Rest. Corp.*, No. 12 Civ. 757(RWS), 2013 WL 3340290, at *5 (S.D.N.Y. July 2, 2013), so I do not find any issues with that addition.

Defendants' next two arguments involve Plaintiff's proposed time period for the notices and the notices' references to the NYLL.  (Def Mem. 16–17.)  Although only the FLSA, and not the NYLL, authorizes collective actions, some courts in this Circuit have, for purposes of efficiency, approved six-year notice periods in order to identify "plaintiffs with FLSA claims who may also have NYLL claims subject to [the] six-year statute of limitations." *Ramos v. Platt*, No. 1:13–CV–8957–GHW, 2014 WL 3639194, at *4 (S.D.N.Y. July 23, 2014); *see also Fernandez v. Catholic Guardian Servs.*, 17 Civ. 03161 (ER), 2018 WL 4519204, at *4 (S.D.N.Y. Sept. 20, 2018) (citing *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 410–11 (S.D.N.Y. 2012)).  "A more recent trend, however, is to approve three-year notice periods to avoid 'the confusion caused by notifying plaintiffs who potentially have two disparate claims with different statutes of limitations, along with the inefficiency of providing notice to plaintiffs whose claims may well be time-barred.'" *Sanchez v. El Rancho Sports Bar Corp.*, No. 13 Civ. 5119(RA), 2014 WL 1998236, at *4 (S.D.N.Y. May 13, 2014) (quoting *Trinidad*, 962 F. Supp. 2d at 564).

Accordingly, "[b]ecause Plaintiff[] ha[s] not moved for class certification of [his] NYLL claims under Federal Rule of Civil Procedure 23 and because [] employees who have only state-

law claims are not eligible to join this collective action," I conclude that a three-year notice

period is appropriate.  *Id.*; *see also Contrera v. Langer*, 278 F. Supp. 3d 702, 722 (S.D.N.Y.

2017) ("In the present case, we believe that the three-year period more effectively serves the goal

of efficiency and will avoid confusing individuals whose claims arise only under the NYLL."

(internal quotation and alteration marks omitted)); *Fernandez*, 2018 WL 4519204, at *4.  In

addition, since Plaintiff does not move to certify his NYLL claims, the notice should only focus

on the "discrete FLSA portion of this litigation."  *Lanqing Lin v. Everyday Beauty Amore Inc.*,

18-cv-729 (BMC), 2018 WL 6492741, at *6 (E.D.N.Y. Dec. 10, 2018).  The revised notice must

strike any references to the NYLL.  *See id.*; *McBeth v. Gabrielli Truck Sales, Ltd.*, 768 F. Supp.

2d 396, 400 (E.D.N.Y. 2011) (there is no reason to reference state law claims when the notice

did not encompass them).

### 2.  Distribution of the Notice

#### a.  Posting

Defendants challenge Plaintiff's request to post the notice and consent forms in each of

Defendants' places of business; because, without presenting facts that other methods are

necessary, first-class mail is the preferred method to inform individuals of their ability to opt in

to the collective.  (Def. Mem. 17–18.)  "Posting notice in the workplace maximizes potential

plaintiffs' opportunities to be informed of the pendency of the litigation and consider whether to

opt in."  *Bittencourt v. Ferrara Bakery & Cafe Inc.*, 310 F.R.D. 106, 118 (S.D.N.Y. 2015)

(alteration and citation omitted).  But courts in this Circuit disagree on whether posting the notice

is necessary when prospective plaintiffs are reachable through other means.  *Compare Whitehorn

v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011) ("Courts routinely

approve requests to post notice on employee bulletin boards and in other common areas, even

20

where potential members will also be notified by mail."), *and Oakley v. Servisair, LLC*, 13-cv-4191 (ENV) (PK), 2017 U.S. Dist. LEXIS 109921, at *41–42 (E.D.N.Y. July 11, 2017) ("[a]lthough posting the notice on the business premises may be duplicative for some individuals, given the potential complications that arise with direct notification, posting helps ensure that all potential class members are informed about the litigation."), *with Amador v. Morgan Stanley & Co. LLC*, No. 11 Civ. 4326(RJS), 2013 WL 494020, at *10 (S.D.N.Y. Feb. 7, 2013) (posting notice is unnecessary when the notice is mailed to potential plaintiffs), *and Gordon v. Kaleida Health*, No. 08–CV–378S, 2009 WL 3334784, at *11 (W.D.N.Y. Oct. 14, 2009) ("the only group that will be reached by posting are current employees, who have an interest in providing their employer with an up-to-date mailing address").

Here, because Defendants do not indicate any difficulties procuring non-managerial employees' contact information, including their mailing addresses, email addresses, and phone numbers, and because I direct Defendants to produce this contact information to Plaintiff, *see infra*, I find posting the notice in all of Defendants' businesses unnecessarily duplicative to reach prospective plaintiffs and potentially disruptive to the general business in those workplaces. *See Knox v. John Varvatos Enters. Inc.*, 282 F. Supp. 3d 644, 668 (S.D.N.Y. 2017) (denying request to post notice because employees were reachable by mail or email and because the court "recognize[d] the potential disruption that can occur in the employer-employee relationship when an employer is required to post a notice in the workplace announcing that one or more employees have accused it of violating the law"); *Garcia v. Spectrum of Creations Inc.*, 102 F. Supp. 3d 541, 551 (S.D.N.Y. 2015) ("We recognize that a posting of notice in the workplace is not always an effective or even appropriate way to reach similarly situated employees, and that such a posting may have negative effects on the workplace environment."). I also find that,

based on my understanding of Fedcap and Wildcat's business models from the parties'
submissions, posting the notice would likely create confusion among individuals who are not
employed by either entity but frequent their places of business.

> b.  Mailing

Next, Defendants argue that the opt-in consent forms should be sent to the Clerk of Court
rather than Plaintiff's counsel.  (Def. Mem. 18.)  Defendants assert this is the preferred practice
for several reasons including (1) it is the common practice in New York; (2) it reduces the
turnaround time between receipt by Plaintiff's counsel and the need to file the form with the
Court, thus avoiding the risk of delaying a tolling of the statute of limitations; and (3) it allows
opt-in plaintiffs to select counsel of their own choice.  (Def. Mem. 18.)  Plaintiff does not offer
any reason why I should not adopt Defendants' reasoning, but simply posits the forms should be
sent to Plaintiff's counsel because "while courts in this district have not come to a consensus on
this issue, the majority of courts have directed opt-in plaintiffs to mail the consent form to
plaintiffs' counsel."  (Pl. Reply 9 (internal quotation marks omitted) (quoting *Agerbrink v. Model
Serv. LLC*, 14 Civ. 7841 (JPO) (JCF), 2016 U.S. Dist. LEXIS 12486, at *14 (S.D.N.Y. Feb. 2,
2016)).)

I agree with Defendants' reasoning, specifically because sending the forms directly to
Plaintiff's counsel "implicitly discourages opt-in plaintiffs from selecting other counsel."
*Rosario v. Valentine Avenue Discount Store, Co.*, 828 F. Supp. 2d 508, 521 (E.D.N.Y. 2011).
*See also Mikityuk v. Cision US Inc*., 21-cv-510 (LJL), 2021 WL 1750370, at *10–11 (S.D.N.Y.
May 4, 2021) (holding that "opt-in Plaintiffs should send their consent forms to
the Clerk of Court" in part because it "protects the plaintiff's autonomy [by] putting it in the
hands of the plaintiff"); *Hernandez v. Fresh Diet Inc.*, No. 12 Civ. 4339(ALC)(JLC), 2012 WL

5936292, at *2 (S.D.N.Y. Nov. 21, 2012) (concluding that "consent forms should be returned to the Clerk of the Court in order to ensure that opt-in Plaintiffs understand that they may choose their own counsel without being influenced by having to return the form to Plaintiffs' counsel"); *Hallissey*, 2008 WL 465112, at *4 (holding that notices must be sent only to the Clerk of the Court "to prevent discouraging the [employees] from seeking outside counsel."). For this reason, exercising my "broad discretion" over the details of the notice, *Gjurovich*, 282 F. Supp. at 106, I conclude it is appropriate for notice to be sent directly to the Clerk of Court.

Accordingly, based on my rulings regarding the content and distribution of the notice and consent forms, the parties are ordered to submit a revised notice, as well as a joint letter updating me as to the parties' discussions, within thirty (30) days of this order. To the extent that the parties are unable to agree on any details in accordance with my rulings, the letter shall identify the specific items about which the parties could not agree so I can rule on such issues. *See Yap*, 146 F. Supp. 3d at 568 ("Plaintiffs and Defendants are hereby ORDERED to meet and confer on a newly-revised notice that incorporates the Court's rulings above.").

### C.  *Request for Contact Information*

Plaintiff requests "names, Social Security numbers, titles, compensation rates, dates of employment, last known mailing addresses, email addresses, and all known telephone numbers of all Covered Employees." (Pl. Mem. 2, 20.) Defendants oppose this request as premature, arguing that Plaintiff has failed to make a modest showing that he and the collective are similarly situated. (Def. Mem. 19.) I find that Plaintiff has met his modest burden and, "to effectuate the FLSA's remedial purpose," such discovery of names and contact information of potential collective members is warranted. *Lianhua Weng v. Kung Fu Little Steamed Buns Ramen Inc.*, 17 civ. 273 (LAP), 2018 WL 1737726, at *5 (S.D.N.Y. Mar. 26, 2018). However, I find that

Plaintiff's request for information is overly broad and unnecessary at this stage of the litigation.

Defendants request that, if I authorize notice, I limit the production to the name and last known mailing address of only hourly, non-exempt employees who worked in the locations where Plaintiff worked within the last two to three years.  (Def. Mem. 19.)  Courts in this Circuit have limited the scope of requests for contact information in collective FLSA if production of the information is unnecessary or unduly invasive of employees' privacy.  *See Hernandez v. NHR Human Resources LLC*, 20cv3109 (PGG) (DF), 2021 WL 2535534 at *17 (S.D.N.Y. June 18, 2021) ("this Court concludes that requiring the disclosure of Social Security numbers is unnecessary"); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 324 (S.D.N.Y. 2007) (defendant was not required to produce private information such as telephone numbers and Social Security numbers for notice purposes); *Fengler v. Crouse Health Found., Inc.*, 595 F. Supp. 2d 189, 198 (N.D.N.Y. 2009) (in the interest of privacy, phone numbers, SSNs, and e-mail addresses should not be produced for notification purposes).  However, courts do "routinely approve" requests that defendants produce an electronic list including names, addresses, telephone numbers, dates of employment, locations of employment, and email addresses of potential plaintiffs "once conditional certification has been granted."  *Costello v. Kohl's Ill., Inc.*, No. 1:13–CV–1359–GHW, 2014 WL 4377931, at *8 (S.D.N.Y. Sept. 4, 2014).  "[P]ractical requests with respect to disseminating notice and reminders, such as dissemination via email and text messages, further the purpose of notice of a collective action under the FLSA."  *Portilla v. Bridgehampton Stone, Inc.*, CV 17-2549 (JMA)(AYS), 2019 WL 1128364, at *10 (E.D.N.Y. Mar. 12, 2019).

Accordingly, I conclude production of the names, titles, dates of employment, last known mailing addresses, email addresses, and all known telephone numbers of all Covered Employees

in an electronic format is appropriate.  I find that Plaintiff's request for Social Security numbers and compensation rates is overly broad and does not aid Plaintiff in disseminating notice or identifying prospective plaintiffs.  Defendants need not conduct investigations outside of their records to find the information for every employee requested by Plaintiffs, but must provide the information they can extract from their records.  *See Garcia Ramos*, 2020 WL 2832776, at *10 ("Defendants must produce all the contact information requested by Plaintiffs that can be extracted from their records, but are not required to produce information they do not have.")

### D.  *Equitable Tolling*

Plaintiff requests that the applicable FLSA statute of limitations not be tolled until such time that Plaintiff is able to send notice to potential opt-in plaintiffs.  (Pl. Mem. 21.)  Defendants oppose equitable tolling because Plaintiff has not met his burden to establish entitlement to tolling.  (Def. Mem. 20.)

Typically, in a FLSA collective action, "the statute of limitations for each plaintiff runs when he or she files written consent with the court electing to join the lawsuit, not when the named plaintiff files the complaint."  *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) (citing 29 U.S.C. § 256(b)).  "However, courts have discretion to equitably toll the limitations period in appropriate cases in order to avoid inequitable circumstances."  *Id.* (internal quotation marks omitted).  "To apply equitable tolling, the Court must find that a plaintiff has satisfied two strict conditions:  (1) that extraordinary circumstances prevented the plaintiff from timely filing his or her claim, and (2) that the plaintiff pursued his or her claim with reasonable diligence during the requested period."  *Alvarado v. Villas Mkt. Place Inc.*, 19-CV-4036 (VEC), 2020 WL 91489, at *3 (S.D.N.Y. Jan. 8, 2020).  "[T]he delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in

a FLSA case, may be deemed an extraordinary circumstance justifying application of the

equitable tolling doctrine." *McGlone*, 867 F. Supp. 2d at 445 (internal quotation marks omitted);

*Sushi Nomado of Manhattan, Inc.*, 2019 WL 3759126, at *11 (collecting cases where courts

have tolled the statute of limitations for the claims of potential opt-in plaintiffs for the period of

time that a motion for conditional certification has been pending).

Because this motion has been pending for several months, I conclude that equitable

tolling through at least until the date of this Opinion & Order is appropriate, and may be

appropriate through the date of issuance of the notice, provided that Plaintiff pursue his claims

with "reasonable diligence." *Alvarado*, 2020 WL 91489, at *3.  Because no notice has yet been

approved and distributed, I cannot assess the parties' diligence.  As such, I will not set an end

date of the notice period at this time.  The parties shall meet and confer on this issue, and if they

cannot agree, they shall set forth their positions in their joint letter accompanying their revised

proposed notice.

### V.   <u>Conclusion</u>

Because I find that conditional certification on Plaintiff's overtime claim is warranted

with respect to all non-management employees of Defendants' businesses, Plaintiff's motion for

conditional certification is GRANTED.  I hereby (1) conditionally certify a class of non-

managerial employees employed by Fedcap and Wildcat from February 28, 2014 to the present;

(2) order Defendants to produce in electronic format the names, titles, dates of employment, last

known mailing addresses, email addresses, and all known telephone numbers of all Covered

Employees to the extent such information is contained in Defendants' records; and (3) direct the

parties to meet and confer with respect to the content of the proposed notice and, within thirty

(30) days of the Opinion & Order, submit a revised notice along with a joint letter that (a) details

any objections and (b) provides proposed deadlines for scheduling mediation and exchanging

mediation-related discovery.

SO ORDERED.

Dated: February 1, 2022
        New York, New York

Vernon S. Broderick
United States District Judge